**FILED**

DEC 1 4 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**VANESSA A. MCFADDEN**
3457 Massachusetts Ave S.E.
Washington, DC 20019

        Plaintiff,

        v.

**BALLARD SPAHR ANDREWS &**
**INGERSOLL, LLP**
601 13th Street, N.W.
Suite 1000 South
Washington, DC 20005-3807

AND

**MARGARET RILEY-JAMISON**
1505 Crystal Drive, Apt. 905
Arlington, VA 22202-4171

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. _____

CASE NUMBER   1:05CV02401

JUDGE: Richard J. Leon

DECK TYPE: Employment Discrimination

DATE STAMP: 12/14/2005

*JURY ACTION*

## COMPLAINT
(EMPLOYMENT DISCRIMINATION: 442 CIVIL RIGHTS-EMPLOYMENT)

Comes now Plaintiff, Vanessa A. McFadden, and by way of Complaint against the

Defendants, say as follows:

### NATURE OF THE ACTION

1.     This action is brought under Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. § 2000e et seq.; The Civil Rights Act of 1866, 42 U.S.C. § 1981(1988);

and the District of Columbia Human Rights Act, D.C. Code § 2-1402.11 et seq,

for race discrimination and retaliation in employment.

2.  This action is also brought under the Americans With Disabilities Act, 42 U.S.C §

12101 et seq., and the District of Columbia Human Rights Act, D.C. Code § 2-

1401.01 et seq., for disability discrimination and retaliation in employment.

3.  This action is further brought for violations of the Family and Medical Leave Act,

29 U.S.C. § 2601 et seq., and regulations promulgated thereunder, 29 C.F.R. §

825.100 et seq.

## JURISDICTION

### SUBJECT MATTER JURISDICTION

4.  The Court enjoys subject matter jurisdiction over this dispute as it predominantly

concerns a federal question, and claims presented under federal law.  28 U.S.C §

1331.

5.  The Court has been granted jurisdiction over this matter, pursuant to 42 U.S.C. §

2000e-5(f)(3); 28 U.S.C.§ 1367 (a);(e); 42 U.S.C. § 12117(a); 29 U.S.C. §

2617(a)(2); and D.C. Code § 2-1403.16.

6.  Plaintiff's claims are properly before this Court, as she has exhausted her

administrative remedies through the U.S. Equal Employment Opportunity

Commission, who has issued Plaintiff a "right to sue" letter, attached as Appendix

A.  Plaintiff received the right to sue letter dated September 14, 2005 in a envelop

postmarked September 15, 2005, and files this action within the requisite 90-day

period following her receipt.

## PERSONAL JURISDICTION AND VENUE

7.   This Court has jurisdiction over the Defendants, pursuant to 42 U.S.C. §§ 2000e-
5(f)(3), 2000e-16(c); 42 U.S.C. § 12117 (a), and 29 U.S.C. § 2617.

8.   The United States District Court for the District of Columbia is the proper venue
for this action since Ballard Spahr is located within the District of Columbia and
continuously conducts business in the District of Columbia.  Moreover, virtually
all of the events giving rise to the claims asserted herein occurred in this judicial
district, 28 U.S.C. § 1391(e).

## PARTIES

9.   The Plaintiff, Vanessa A. McFadden is an individual who is, and all times relevant
herein, was a resident of the District of Columbia.  She is, and at all times relevant
herein, was an employee of the Defendant Ballard Spahr Andrews & Ingersoll,
LLP, within the meaning of 42 U.S.C. § 2000e(f), 42 U.S.C. §1211(2), and D.C.
Code §2-1401.2(a)

10.  Defendant Ballard Spahr Andrews & Ingersoll, LLP (hereinafter referred to as
"Ballard Spahr" or "Firm") is a limited liability partnership located at 601 13th
Street, N.W., Suite 1000 South, Washington, DC  20005-3807 (hereinafter
referred to as the firm's "Washington, D.C. office.")  Ballard Spahr is a law firm
whose principal business is providing legal services.  Ballard Spahr is an
employer, as defined by 42 U.S.C. §§ 2000e(b), 2000e-16, 42 U.S.C. § 12111(5),
29 U.S.C.§ 2611 (4), and D.C. Code §2-1401.2(10), with over 500 employees.

11.   Defendant Margaret Riley-Jamison is an individual.  Plaintiff is informed and

believes, and based thereon alleges, that Ms. Riley-Jamison is a resident of the

Commonwealth of Virginia.  Ms. Riley-Jamison is, and all times relevant herein,

was the Human Resources Manager at Ballard Spahr's Washington, D.C. office.

Hence, at all times relevant herein, Ms. Riley-Jamison was a managerial employee

and agent of Ballard Spahr and its partners.  In addition, Ms. Riley-Jamison is

named as a Defendant here, in her individual capacity for purposes of personal

liability.

### FACTUAL ALLEGATIONS

12.   Plaintiff Vanessa A. McFadden is an African-American female who, during most

time periods covered herein, worked as a Legal Secretary for Ballard Spahr at its

Washington, D.C. office.

13.   Ballard Spahr hired Ms. McFadden on or about June 5, 1989.  Her duties as Legal

Secretary included answering the telephone, managing clients, entering attorney

timesilps and preparing billing invoices, setting up conference, and editing,

finalizing and filing legal documents.

14.   Throughout her employment, Ms. McFadden performed her duties and

responsibilities well, and consistently met or exceeded Ballard Spahr's

expectations.

15.   Ballard Spahr provided its relatively-senior legal secretaries, including Ms.

McFadden paid sick leave for absences from work necessitated by their illnesses

or that of their family members, and for medical appointments, up to 10 days.

16.    On or about Friday, October 17, 2002, Ms. McFadden took an absence from work

for a doctor's appointment with Dr. Thompson at Providence Hospital for a

colonoscopy.  Ms. McFadden  put in a leave request in advance and received

approval for the absence.

17.    On Monday, October 20, 2002, Ms. McFadden's husband, Cornelius McFadden

was diagnosed with cancer.  He was immediately scheduled for surgery on

October 23, 2002 at Greater Southeast Community Hospital.

18.    On October 20, 2002, Ms. McFadden called Ballard Spahr and spoke with the

partner to whom she reported, Charles Henck and reported her husband's

condition, impending surgery and her inability to report to work.  Mr. Henck

approved her absence.

19.    On October 20 and 23, 2002, Ms. McFadden reported these matters and her

husband's surgery to Ms. Riley-Jamison.  On October 23, 2002, Ms. Riley-

Jamison advised Ms. McFadden that she would have to be placed on "FMLA

leave since [she's] been out more than three days."

20.    After having been absent from work since October 20, 2002 due to her husband's

serious illness, Ms. McFadden reported back to work on or about November 2,

2002.  Upon her return, Ms. Riley-Jamison gave Ms. McFadden a memorandum

from Fern Forman, Benefits Administrator in Ballard Spahr's Philadelphia,

Pennsylvania office.  The memorandum stated that Ms. McFadden had been out

on FMLA leave, that her "FMLA Coverage [period was] 10/17/02– 1/8/03".  The

5

memorandum further requested that Ms. McFadden supply a certification concerning her husband's condition.

21.　Ms. McFadden supplied the certification of her husband's terminal illness on or about November 14, 2002. Ms. McFadden continued to work her normal schedule throughout the remainder of the year, taking off only for firm-recognized holidays, and November 27th, at Mr. Henck's suggestion, and December 5th for her husband's post surgery follow-up appointment.

22.　Ms. McFadden told Mr. Henck and Ms. Riley-Jamison that her husband's chemotherapy treatments would begin in late December 2002 or early January 2003 and that she would need time-off to go to the scheduled medical appointments and to care for her husband after the physically-ravaging treatments.

23.　Ms. Riley-Jamison informed Ms. McFadden that her 12-week FMLA period **included the days/times she reported to work,** not just the days she was absent. Ms. McFadden questioned this and stated that she understood that she was entitled to 16 weeks leave from work, under the D.C. Family and Medical Leave Act. Ms. McFadden also told Ms. Riley-Jamison that she sought assistance from the U.S. Department of Labor on the matter, who advised her she was entitled to 16 weeks of leave. Ms. Riley-Jamison insisted that Ms. McFadden was only entitled to 12 weeks, starting October 17, 2002.

24.　Ms. Riley-Jamison contacted Ms. Forman in Philadelphia. Ms. Forman agreed with Ms. Riley-Jamison, who again told Ms. McFadden that she was entitled to

only 12 weeks of family leave and that her 12-week FMLA entitlement included days she worked.

25.   Before her husband began chemotherapy, Ms. McFadden emailed her husband's chemotherapy schedule to Mr. Henck and Ms. Riley-Jamison.

26.   Ballard Spahr partners Charles Henck and managing partner, Allan Winn, approved the conversion of Ms. McFadden's full-time schedule to a part-time schedule to care for her husband.  They agreed that Ms. McFadden would work the following alternating schedule: Week 1- Thursday and Friday (with Mondays, Tuesdays, and Wednesdays off) and Week 2-Tuesday-Friday (with Mondays off).

27.   Mr. McFadden began chemotherapy on January 6, 2003.  Accordingly, Ms. McFadden began working the part-time schedule on this date.

28.   On or about January 23, 2003, however, Ms. Riley-Jamison told Ms. McFadden that her part-time schedule was "going to be a problem" and asked her if she could find anyone else to care for her husband so that she could work.

29.   Ms. Riley-Jamison told Ms. McFadden that Ballard Spahr was doing her "a favor" allowing her to work part-time, since her FMLA had already expired.  Ms. Riley-Jamison added that the FMLA does not actually permit leave to be taken intermittently. Ms. McFadden again questioned why her FMLA leave included times she worked.  Ms. Riley-Jamison responded by saying: "that's the law."

30.   To maintain her job, Ms. McFadden arranged for her sister to care for husband on Tuesdays and reported to work every Tuesday, as instructed.

31.  Ms. McFadden worked part-time, taking intermittent leave from January 6, 2003 to on or about May 12, 2003.

32.  While working part-time, Ms. Riley-Jamison and other Ballard Spahr partners/employees subjected Ms. McFadden to harassing comments regarding her husband's terminal illness, that she believed were designed to coerce her into coming back to work full-time. These statements included: that Ms. McFadden's daughters should quit college to care for their father, instead of her; and that she should just put her husband in hospice since he only has 4 to 6 months to live anyway. In March 2003, Mr. Henck instructed Ballard Spahr System Administrator, Janet Craig to contact Ms. McFadden at home to tell her to put her husband in hospice and to sell her property to finance his hospice care.

33.  Ms. Riley-Jamison also required Ms. McFadden to call in every Monday and Wednesday morning – her pre-scheduled days off – just to tell her that she would be out. And one time, Ms. Riley-Jamison sent Ms. McFadden seven or more emails, in one day, informing her that she would be on Leave Without Pay for one of her scheduled absences. Ms. McFadden found this to be harassing and reported it to Mr. Henck.

34.  From November 2002 to March 2003, Ms. McFadden complained to partner Henck and another legal secretary that she believed that Ms. Riley-Jamison was mistreating her due to her race.

35.  On or about March 7, 2003, Ms. Riley-Jamison confronted Ms. McFadden in the Firm's kitchen. Ms. Riley-Jamison told Ms. McFadden that she understood that

8

Ms. McFadden had been "complaining about being mistreated. " Ms. Riley-Jamison then yelled at Ms. McFadden, while denying she mistreats her.

36.    In or around April 2003, Ms. McFadden began to experience her own health problems. Many of Ms. McFadden's co-workers and Mr. Henck observed the deterioration of her physical condition. By May 2003, Ms. McFadden had been diagnosed with Graves Disease. Her physician, Dr. Kristen Thomas, wrote Ballard Spahr and requested that she be placed on disability leave. This, however, did not occur.

37.    In or around May and June 2003, Ms. McFadden took approximately 12 days off from work for testing at Georgetown Hospital and recuperation for her illnesses and adverse reaction to medication. Ballard Spahr approved these absences.

38.    Ms. McFadden continued to work full-time from mid-May 2003 to October 2003. During this time, Ms. McFadden's health continued to deteriorate. She was diagnosed with Graves Disease, Fibromyalgia, Rheumatoid Arthritis, Depression, Hypertension and Bronchial Asthma. By the Fall of 2003, Ms. McFadden found herself substantially limited in standing, walking, breathing, manual dexterity, and sleeping due to her disabling conditions.

39.    Her physician, Dr. Phillip Mussenden, deemed her disabled and no longer able to continue to work. Dr. Mussenden instructed her to take disability leave from Ballard Spahr. Ms. McFadden so informed Mr. Henck and she began her medical leave on or about October 15, 2003.

40. Ms. McFadden collected no salary from Ballard Spahr from October 15, 2003 to the end of November 2003. In late November 2003, she began receiving 60 % of her salary under the Firm's short-term disability policy.

41. Ballard Spahr sponsors short-and long-term disability benefits plans for its employees, for which Unum Provident is the insurance carrier.

42. The Firm's short-term disability benefits ended on or about January 14, 2005. After which time, Ms. McFadden was eligible for long-term disability at that time, provided she applied for them. Yet, the Firm did not begin processing its administrative portion of the application until 12 days after the expiration of the short-term disability benefits. Upon information and belief, Fern Forman, Benefits Administrator, was responsible for these tasks at Ballard Spahr.

43. By letter dated March 9, 2004, Ballard Spahr advised Ms. McFadden that her FMLA leave had already expired on February 4, 2004. On or before the date the Firm believed her FMLA leave expired, no one from Ballard Spahr contacted Ms. McFadden regarding her return to work as a Legal Secretary or alternate position, which she could perform, despite her disability.

44. In its March 9th letter, Ballard Spahr offered Ms. McFadden an additional three months of unpaid leave with no job protection and no promise of reinstatement. Exercising the only option presented to her, Ms. McFadden requested this additional leave in writing.

45. Ms. McFadden received no response to her additional leave request, however she contacted Ms. Forman regarding her long-term disability benefits and inquired

about her employment status. Ms. Forman told Ms. McFadden that she "should just make it easy on everybody and resign." Ms. McFadden refused to resign.

46.    The following day, Ballard Spahr's management officials, Wendy Iversen, John DiBattista, Ms. Forman and Ms. Riley-Jamison called Ms. McFadden at home and told her that her leave had expired and that she needed to report back to work. Ms. McFadden communicated that she could not return to the Legal Secretary position, given her disabling conditions. They offered Ms. McFadden a job in word processing. Ms. McFadden indicated that she could not perform that job because she could not type for extended periods of time due to her Graves' Disease, Fibromyalgia and Arthritis for which she was wearing hand braces.

47.    Ballard Spahr officials then advised Ms. McFadden that she was terminated.

48.    Ms. McFadden then brought up the receptionist position and questioned why she was being treated differently than the Caucasian receptionist who had been absent from work due to breast cancer, since December 2003. The Firm officials simply replied that their situations were different.

49.    Although Ms. McFadden had been provided provisional benefits during some portions of her absence from work since October 15, 2003, she was not approved for long-term disability benefits until September 22, 2005–after nearly two years of haranguing and mis-information provided by Ballard Spahr and Unum. Even more, Ms. McFadden is now being required to payback the provisional benefits she received, amounting to over $ 27,000.

11

## COUNT I
### RACE DISCRIMINATION

50.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 49,

inclusive, and incorporates the same by reference as though set forth fully

herein.

51.    Ms. McFadden is an African American.

52.    Ms. McFadden was qualified for the position of Legal Secretary at Ballard Spahr

and had met or exceeded her performance expectations.

53.    Ms. McFadden suffered the following adverse employment actions: Ballard

Spahr and Ms. Riley-Jamison denied Ms. McFadden leave and schedule

modification; Ballard Spahr and Ms. Riley-Jamison treated Ms. McFadden

disparately with regard to leave procedures and job protection; and Ballard Spahr

terminated Ms. McFadden's employment.

54.    Ballard Spahr replaced Ms. McFadden with a Caucasian woman.

55.    Ballard Spahr and Ms. Riley-Jamison denied Ms. McFadden paid leave, unpaid

leave, and other benefits while granting leave and benefits to Caucasian Legal

Secretaries, a System Administrator, and Receptionist for absences necessitated

by their own medical conditions or that of their family's.

56.    Ballard Spahr and Ms. Riley-Jamison interfered with Ms. McFadden intermittent

leave to care for her husband who suffers from a terminal illness and was

undergoing continuing treatment, while granting schedule modifications to

Caucasian Legal Secretaries, Information Technology Administrator, and

Receptionist for absences necessitated by their own medical conditions or that of their family's.

57. Ballard Spahr and Ms. Riley-Jamison placed additional requirements upon Ms. McFadden for requesting leave, reporting absences and certifying medical conditions/treatment that they did not require of Caucasian Legal Secretaries, Information Technology Administrator, and Receptionist under similar circumstances.

58. Ballard Spahr and Ms. Riley-Jamison harassed Ms. McFadden while working intermittently to care for her husband, who suffers from a terminal illness and was undergoing continuing treatment, while not subjecting to harassment Caucasian Legal Secretaries, an Information Technology Administrator, and Receptionist who worked modified schedules for their own medical conditions or that of their family's.

59. Ballard Spahr and Ms. Riley-Jamison terminated Ms. McFadden allegedly due to her medical inability to return to work, while not discharging, but retaining Caucasian Legal Secretaries, Information Technology Administrator, and Receptionist who reportedly could not work due to their own medical conditions or that of their family's.

60. The reasons offered by the Defendants for taking the adverse employment actions against Ms. McFadden are pretextual.

61. Several other African-American employees were terminated from Ballard Spahr by Ms. Riley-Jamison, since she joined the Firm.

62.   Ms. McFadden's race motivated Ballard Spahr to take the adverse employment actions described herein.

63.   Ms. McFadden's race motivated Ms. Riley-Jamison to take the adverse employment actions described herein.

64.   Ballard Spahr, at all times relevant hereto, had actual and constructive knowledge of the conduct of its managerial employees.

65.   Defendants discriminated against Ms. McFadden due to her race in violation of Title VII, 42 U.S.C. § 2000e-16(a).

66.   Defendants individually and collectively intentionally discriminated against Ms. McFadden in the performance and termination of an employment contract, due to her race in violation of The Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

67.   Defendants discriminated against Ms. McFadden due to her race in violation of the D.C. Human Rights Act, D.C. Code § 2-1402.11 et seq. ("DCHRA").

68.   The acts alleged in paragraphs 50-58 constitute continuing violations under Title VII, Section 1981, and the DCHRA.

69.   Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendants, and their agents, have engaged in discriminatory practices against her which are not yet fully known.  At such time as said discriminatory practices become known to her, Plaintiff will seek leave of court to amend this Complaint in that regard.

14

## COUNT II
### DISABILITY DISCRIMINATION

70.  Plaintiff repeats and realleges the allegations of paragraphs 1 through 69, inclusive, and incorporates the same by reference as though set forth fully herein.

71.  Ms. McFadden is a qualified individual with a disability. She has physical and mental impairments, which substantially limit major life activities within the meaning of 42 U.S.C § 12102 (2). She has been diagnosed as suffering from Graves'' Disease, Fibromyalgia, Depression, Rheumatoid Arthritis and Bronchial Asthma.

72.  Ms. McFadden was qualified for the position of Legal Secretary at Ballard Spahr and had met or exceeded her performance expectations.

73.  Ms. McFadden could have performed the essential functions of a vacant position with Ballard Spahr with or without a reasonable accommodation.

74.  Ballard Spahr and Ms. Riley-Jamison terminated her employment with the Firm.

75.  Ballard Spahr replaced Ms. McFadden with a non-disabled individual.

76.  Ms. McFadden requested a reasonable accommodation for her disability.

77.  Ballard Spahr failed to provide Ms. McFadden a reasonable accommodation for her disability. The Firm declined to reassign her to the position of receptionist, which she could have performed, despite her limitations. Providing this reasonable accommodation did not place an undue hardship on Ballard Spahr or its operations.

15

78. Ballard Spahr's failure to provide Ms. McFadden a reasonable accommodation for her disability violated the Americans With Disabilities Act ("ADA"), 42 U.S.C.§ 12102 (2) and the D.C. Human Rights Act (DCHRA), D.C. Code § 1-2502(5A), 4 DCMR § 513.

79. Since on or about October 14, 2003, Ballard Spahr and Ms. Riley-Jamison had a record of Ms. McFadden's disability.

80. Ballard Spahr and Ms. Riley-Jamison regarded Ms. McFadden as disabled.

81. Ballard Spahr terminated Ms. McFadden due to her actual disability, a record of her disability, and perceived disability in violation of the ADA. 42 U.S.C. § 12102 (2)(A-C).

82. Ballard Spahr terminated Ms. McFadden due to her actual disability, a record of her disability, and perceived disability in violation of the DCHRA. D.C. Code Ann.§ 2-1401.25(5A).

83. Ballard Spahr, at all times relevant hereto, had actual and constructive knowledge of the conduct of its managerial employees described herein.

84. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendants, and their agents, have engaged in discriminatory practices against her which are not yet fully known. At such time as said discriminatory practices become known to her, Plaintiff will seek leave of court to amend this Complaint in that regard.

16

## COUNT III
### FAMILY AND MEDICAL LEAVE ACT VIOLATIONS

85.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 84,

inclusive, and incorporates the same by reference as though set forth fully herein.

86.    Ballard Spahr employs 200 or more employees within 75 miles of Ballard Spahr's

Washington, D.C. office.

87.     Prior to her FMLA-qualifying absence from work in October 2002, Ms.

McFadden worked at least 12 months and over 1,250 hours.

88.     From October 2002 to present, Ms. McFadden's spouse has had a serious, chronic

health condition in the form of Stage 4 colon cancer, which required surgery,

inpatient care in the hospital, continuing treatment by his physician and continuing

care for long-term incapacity.  Mr. McFadden has a serious health condition

within the meaning of the FMLA, 29 CFR §§ 825.114, 115(b).

89.    Mr. McFadden underwent a series of chemotherapy treatments once or twice a

week from January 6, 2003 to May 12, 2003.  Ms. McFadden needed to transport

Mr. McFadden to and from these treatments, assist him and his doctors in the

provision of his treatment, and provide medical and personal care for him

following his treatment.  Ms. McFadden was, therefore, eligible and entitled to

family and medical leave to care for a family member with a serious health

condition, per 29 U.S.C. § 2612 (1)(c).

90.    Ms. McFadden's absences from work relating to her spouse's serious health condition were FMLA-qualifying absences and triggered her entitlement to 12 workweeks of unpaid leave.

91.    Ballard Spahr and Ms. Riley-Jamison willfully violated the FMLA by denying Ms. McFadden intermittent family leave between January 2003 and May 2003 up to her 12-week entitlement. Ballard Spahr, through Fern Forman, as well as Ms. Riley-Jamison misrepresented to Ms. McFadden that the days she reported for duty counted toward her FMLA entitlement, that FMLA leave could not be taken intermittently, and that her FMLA leave had expired.

92.    Ballard Spahr and Ms. Riley-Jamison miscalculated Ms. McFadden's family leave entitlement, and denied and interfered with her leave in violation of the FMLA, 29 U.S.C. § 2615.

93.    Ballard Spahr and Ms. Riley-Jamison failed to provide Ms. McFadden accurate and proper notice of her FMLA leave period in violation of 29 CFR § 825.301(c)(d).

94.    Through its partners, employees and/or agents, Ballard Spahr and Ms. Riley-Jamison failed to keep Ms. McFadden and her husband's medical information confidential as required by FMLA, 29 CFR § 825.500(g) and the ADA, 42 U.S.C. §12112 (d)(4)(c), 29 CFR § 1630.14(c)(1), but rather communicated their private medical conditions to Firm staff, during Ms. McFadden's leaves of absence.

95. Ballard Spahr and Ms. Riley-Jamison coerced and restrained Ms. McFadden's use of FMLA leave at various times between November 2002 and May 2003, as alleged in paragraphs 20-33, in violation of FMLA, 29 U.S.C. § 2615.

96. Ballard Spahr, at all times relevant hereto, had actual and constructive knowledge of the conduct of its management employees described herein.

97. The acts alleged in paragraphs 20-33, 91-95 constitute continuing violations and willful violations under the FMLA.

98. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendants, and their agents, have engaged in other violations of the FMLA that are not yet fully known. At such time as said practices become known to her, Plaintiff will seek leave of court to amend this Complaint in that regard.

## COUNT IV
### RETALIATION

99. Plaintiff repeats and realleges the allegations of paragraphs 1 through 98, inclusive, and incorporates the same by reference as though set forth fully herein.

100. Ms. McFadden engaged in activity protected by § 704 of Title VII when, among other things, she complained, on several occasions between November 2002 and March 2003 to Ballard Spahr officials that Margaret Riley-Jamison was treating her disparately and negatively because she is African American.

101. Ballard Spahr had actual and constructive knowledge of these protected activities because Ms. McFadden voiced her opposition to perceived or actual

discriminatory practices to firm partner, Mr. Henck, and to other firm employees who informed Firm management and Ms. Riley-Jamison, Human Resources Manager. Ms. Riley-Jamison admitted knowledge of Ms. McFadden's complaints, on or about March 7, 2003.

102.    Ms. McFadden engaged in conduct protected by the FMLA, including but not limited to taking FMLA-qualifying absences from work between October 20, 2002 and May 14, 2003 due to her husband's serious health condition that required her care. Ms. McFadden further engaged in protected conduct by asserting her right to D.C. FMLA leave and for seeking advice and assistance from the U.S. Department of Labor ("DOL"). Ballard Spahr and Ms. Riley-Jamison were aware of these protected activities because its partners Henck and Winn approved Ms. McFAdden's use of intermittent leave in 2003 and Ms. Riley-Jamison was intimately involved in the provision of FMLA leave to Ms. McFadden. Ms. Riley-Jamison also held a conversation with Ms. McFadden where Ms. McFadden asserted her DCFMLA leave rights and revealed her assistance by DOL.

103.    Ms. McFadden engaged in conduct protected by the ADA, including but not limited to taking disability-related absences and requesting and receiving leave from work, as well as disability benefits from the Firm from October 15, 2003 until her termination on May 14, 2004. Ballard Spahr and Ms. Riley-Jamison were aware of this protected conduct, since they received and approved her leaves of absence from work and corresponded with her in that regard.

104. Ballard Spahr and Ms. Riley Jamison engaged in the following adverse personnel actions against Ms. McFadden: denial of leave and schedule modification; disparate treatment with regard to terms and conditions of employment, including but not limited to leave procedures and job protection; denial of reasonable accommodation; and termination.

105. There is a causal nexus between the adverse personnel actions alleged above and Ms. McFadden's protected activities.

106. The reasons offered by the Defendants for taking the adverse personnel actions against Ms. McFadden are pretextual.

107. Ms. Riley-Jamison and Mr. Henck made statements to and about Ms. McFadden's leave and the reasons therefore that reflected a disdain for her FMLA-qualifying absences.

108. The Defendants did not treat Ms. McFadden as they had treated similarly-situated employees who had not engaged in protected activity.

109. Ballard Spahr, at all times relevant hereto, had actual and constructive knowledge of the conduct of its managerial employees as described above.

110. The Defendants retaliated against Ms. McFadden in violation of Title VII, 42 U.S.C. § 2000e-3(a).

111. The Defendants retaliated against Ms. McFadden in violation of the FMLA, 29 U.S.C. § 2615.

112. The Defendants retaliated against Ms. McFadden in violation of the ADA, 42 U.S.C. § 12203.

113.   The Defendants retaliated against Ms. McFadden in violation of the DCHRA,

D.C. Code § 2-1402.61.

114.   The Defendants, individually and collectively, intentionally retaliated against Ms.

McFadden in violation of §1981, 42 U.S.C.§ 1981.

115.   The acts alleged in paragraphs 20-33, 35, 104 constitute continuing violations

under Title VII, Section 1981 DCHRA, FMLA, and ADA.

116.   Plaintiff is informed and believes, and based thereon alleges, that in addition to the

practices enumerated above, Ballard Spahr, and its agents, have engaged in

retaliatory practices against her which are not yet fully known.  At such time as

said retaliatory practices become known to her, Plaintiff will seek leave of court to

amend this Complaint in that regard.

### PRAYER FOR RELIEF

117. As a direct and proximate result of Defendants' actions, Ms. McFadden has

experienced   and will continue to experience pain and suffering, and extreme and

severe mental anguish and emotional distress.  She has incurred and will continue

to incur medical expenses for treatment by a psychologist and other health

professionals and for other incidental expenses.  Therefore, for each Count alleged

in this Complaint, Ms. McFadden is entitled to medical expenses and

compensatory damages, where permitted.

118.   As a further direct and proximate result of Defendants' violations of law, Ms.

McFadden has been compelled to retain the services of counsel and has thereby

incurred and will continue to incur, legal fees and costs. Therefore, for each

Count alleged in this Complaint, Ms. McFadden requests that attorneys' fees be

awarded, pursuant to 42 U.S.C.§ 2000e-5(k), 42 U.S.C. § 12205, 29 U.S.C. §

2617(a)(3), D.C. Code §§ 2-1403.13(e), 2-1403.16(b).

119.    Defendants unlawful actions were undertaken with malice and/or with reckless to

Ms. McFadden's federally-protected rights. Therefore, for Counts I, II, and IV in

this Complaint, Ms. McFadden seeks punitive damages.

WHEREFORE, Plaintiff prays for the following relief:

a.    An order declaring the acts and practices complained of herein violate Title VII of

the Civil Rights Act of 1964, the D.C. Human Rights Act, The Civil Rights Act of

1866, the Americans With Disabilities Act, and the Family and Medical Leave

Act;

b.    An order restraining and permanently enjoining Defendants' illegal acts and

practices;

c.    Back wages and salary, bonuses, and benefits;

d.    Plaintiff's costs, and past and future pecuniary losses;

e.    Equitable and restorative relief, including but not limited to leave restoration and

front pay.

f.    General, special, liquidated, treble and compensatory damages for all claims;

g.    Punitive damages;

h.    Pre-judgment and post-judgment interest;

i.  Plaintiff's attorney's fees and expert witness fees;

j.  All other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all claims and issues triable by jury.

Respectfully submitted,

Dated: December 14, 2005

By: _Teresa W. Murray_
Teresa W. Murray
Bar No. 460430

THE LAW OFFICES OF T.W. MURRAY, LLC
1111 Bonifant Street
Silver Spring, Maryland 20910
Phone: 301-585-1870
Fax: 301-585-1871

## VERIFICATION

I verify under penalty of perjury that the facts and allegations in the Complaint, in the matter of *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP et al.*, are true and correct.

Executed this _14th_ day of December 2005.

Vanessa A. McFadden