UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
VANESSA A. MCFADDEN              )
                                 )
        Plaintiff,               )
                                 )
    v.                           )   Civil Case No.05cv2401 (RJL)
                                 )
BALLARD SPAHR ANDREWS &          )
INGERSOLL, LLP et al.            )
                                 )
        Defendants.              )
_____)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

    Plaintiff Vanessa A. McFadden, by and through undersigned counsel, opposes Defendants Ballard Spahr Andrews & Ingersoll and Margaret Riley-Jamison's Motion to Compel, as Ms. McFadden has fully and cooperatively responded to Defendants' discovery requests and fully complied with the Local Rules and Federal Rules of Civil Procedure.

**I. INTRODUCTION**

    Vanessa McFadden worked as a full-time legal secretary for the Defendant Ballard Spahr Andrews & Ingersoll ("Ballard Spahr" or "Firm") for over 15 years. In late 2002, Ms. McFadden's husband was diagnosed with terminal cancer, which required surgery and continuing, intensive treatment. Ms. McFadden requested leaves of absence from work as well as an intermittent part-time schedule to care for her husband and to assist with his chemotherapy treatments. Ms. McFadden alleges that the Defendant Firm and its Human Resources Manager, Defendant Margaret Riley-Jamison willfully violated the

Family and Medical Leave Act (FMLA) by denying her leave, misrepresenting Ms. McFadden's leave entitlement to her, interfering with her leave entitlement and failing to keep confidential her husband's medical condition. Later, Ms. McFadden's own health deteriorated and she was diagnosed with several disabling conditions, which ultimately rendered her temporarily unable to work in late 2003. While the Firm provided her some FMLA leave, upon the expiration of that leave, it did not offer Ms. McFadden a reasonable accommodation for her disability, despite her request for a reassignment to an open position for which she was qualified. The Firm terminated Ms. McFadden, although it provided liberal paid and unpaid leave, short and long-term disability accommodation, and job retention to Caucasian Firm employees. Thus, she alleges disparate treatment based on race in violation of Title VII of the Civil Right Act of 1964. In part because Ms. McFadden's termination occurred shortly after her exercise of rights to leave and reasonable accommodation under the FMLA and Americans With Disabilities Act, she also brings claims for willful FMLA violations and retaliation.

## II. ARGUMENT

### A. PLAINTIFF'S TARDY OBJECTIONS SHOULD BE EXCUSED FOR GOOD CAUSE

Plaintiff received Defendants' First Set of Interrogatories and First Request for the Production of Documents on May 16, 2006, via first-class mail.[1] Although Plaintiff did not submit her responses on or before June 19, 2006,[2] her objections are not waived because Federal Rule of Civil Procedure 34 does not contemplate waiver for untimely

---

[1] Defendants attempted to send their discovery requests via facsimile on May 15, 2006; however, due to the voluminous nature of the document the fax was not received in its entirety by Plaintiff. A complete copy of the discovery requests was not received until May 16, 2006.
[2] See Ex. 1.

objections to document production requests and Ms. McFadden's lateness should be excused for good cause.

First, Federal Rule of Civil Procedure 34, unlike Rule 33, does not specify that "any ground not stated in a timely objection is waived unless the party's failure to object is excused by the Court for good cause shown." F.R.C.P. 33. Defendants' argue that Plaintiff's objections made 34 days after they propounded their document production requests are waived. Yet, no Federal Rule of Civil Procedure specifically call for waiver based on submitting late objections to document production requests. Thus, the Defendants present no basis for their waiver argument with respect to these requests.

Second, contrary to the Defendants' fantastical assertion that Ms. McFadden was on "vacation" when her responses were due,[3] Ms. McFadden was out of the Washington D.C. metropolitan area, during this time, for health-related reasons. Ex. 2, Letter from Plaintiff's Physician. Once Ms. McFadden was able to transmit her discovery responses to counsel, her counsel then completed work on the responses and forwarded them to the Defendants on June 22, 2006. Plaintiff advised the Defendants that the responses were being transmitted that day and that no objections had been waived. Defendants received the responses on June 23, 2006. Defendants have in no way suffered any prejudice or harm by their receipt of the responses and objections merely four days after their original due date. Thus, the Court should deny Defendants' Motion to invalidate Ms. McFadden's right to present valid objections to some of Defendants' discovery requests.

---

[3] Defendants Motion to Compel (hereinafter Mot. To Compel") at 3.

3

### B. PLAINTIFF'S ANSWERS AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES COMPORT WITH GOVERNING RULES OF CIVIL PROCEDURE.

### 1. Defendants Exceeded the Limit of 25 Interrogatories Set By F.R.C.P. 33.

The Defendants presented Plaintiff with well over 25 interrogatories. Despite Defendants' own assertion in the Joint Meet and Confer Statement that they agree to abide by governing limits placed on the number of interrogatories by Local and Federal Rules of Civil Procedure, they nevertheless propounded – by its own numbering – more than 25 interrogatories.[4] Defendants combined multiple interrogatories into a single interrogatory and simply numbered them as one interrogatory. Meanwhile, Defendants attempt to convince the Court that they actually propounded 25 interrogatories with subparts. Subparts are "questions that seek information about discrete separate subjects"[5] and are counted as separate interrogatories. Here, Defendants propound independent questions calling for discrete separate facts and information. Applying the appropriate definition of a subpart, Plaintiff rightly counted Defendants' Interrogatories as follows:

Interrogatory No. 1 – 1 interrogatory

Interrogatory No. 2[6] – 4 interrogatories[7]

---

[4] According to the Defendants' numbering, they propounded 26 interrogatories.
[5] PROPOSED AMENDMENTS TO THE FEDERAL RULES OF CIVIL PROCEDURE AND FORMS, Matthew Bender Rule 33 Committee Notes.
[6] Interrogatory No. 2:  Identify each health care provider[1] with whom you have consulted or by whom you have been treated or examined within the last ten (10) years. As to each, set forth as precisely as you can the following: the nature of your condition, concern, illness, treatment, or injury; the dates of any consultation, treatment or examination; the diagnosis; and any course of treatment, hospitalization and/or medications taken or prescribed.
[7] Four interrogatories combined: 1) Identify each health care provider[1] with whom you have consulted or by whom you have been treated or examined within the last ten (10) years; 2) identify the nature of your condition, concern, illness, treatment, or injury….[and] the diagnosis; 3) identify the dates of any consultation, treatment or examination; and 4) identify any course of treatment, hospitalization and/or medications taken or prescribed.

4

Interrogatory No. 3[8] – 2 interrogatories[9]

Interrogatory No. 4 – 1 interrogatory

Interrogatory No. 5 – 1 interrogatory

Interrogatory No. 6 – 1 interrogatory

Interrogatory No. 7 – 1 interrogatory

Interrogatory No. 8 – 1 interrogatory

Interrogatory No. 9 – 1 interrogatory

Interrogatory No. 10[10] – 3 interrogatories[11]

Interrogatory No. 11 – 1 interrogatory

Interrogatory No. 12 – 1 interrogatory

Interrogatory No. 13[12] – 2 interrogatories[13]

Interrogatory No. 14 – 1 interrogatory

Interrogatory No. 15 – 1 interrogatory

Interrogatory No. 16[14] – 3 interrogatories[15]

---

[8] Interrogatory No. 3: Identify any and all persons with whom you have had conversations with regarding the allegations made in your Lawsuit, the injuries and damages you allege and your employment with Defendants. Set forth and describe in detail the time, place, and facts surrounding any and all of these communications.

[9] Two interrogatories combined: 1) identify persons with whom she had communications; and 2) the time, place, and substance of communications.

[10] Interrogatory No. 10: Identify and describe when and how you became disabled as alleged in ¶¶ 36, 38-39, 71, 73, 76, 82 of the Complaint including a description of what you were able to do, what activities you were not able to do, how you were not able to do the activities, and to what illness/medical condition you attribute your inability to undertake the activity.

[11] Three interrogatories combined: 1) when and how Ms. McFadden became disabled; 2) description of her abilities, limitations and activities; 3) identify the illness/conditions which cause her limitations.

[12] Interrogatory No. 13: With respect to each instance of "haranguing and misinformation provided by Ballard Spahr and Unum" as alleged in ¶49 of the Complaint, please:
    (a) set forth in detail a description of the same;
    (b) identify the persons with knowledge of facts;
    (c) Identify all documents which evidence support refer or relate to such facts.

[13] Two interrogatories combined: 1) describe the haranguing and misinformation by the Firm and Unum; and 2) identify persons and documents, which relate to these events.

5

Hence, the Defendants reached 25 interrogatories at "16" and, Ms. McFadden had no obligation under F.R.C.P. 33 to answer the remaining interrogatories (17-26) because they were beyond the limits prescribed by Rule 33.

### 2. Plaintiff Fully Answered Defendants' Interrogatories or Otherwise Made Proper Objections.

a. **Interrogatory Nos. 6, 7, 9**[16] – These interrogatories ask for additional facts regarding specific allegations Ms. McFadden raised in her Complaint. Ms. McFadden answered these interrogatories to the best of her ability and where appropriate, indicated that she was aware of no additional facts beyond those contained in her detailed Complaint. Defendants, however, raise concerns about Ms. McFadden's answers as either incomplete or inadequate. During counsels; conference regarding these requests, Plaintiff's counsel indicated that she would consult with Ms. McFadden to inquire whether she had information to add to her original answer. Ms McFadden knew of no additional facts and, therefore, did not supplement her answers to these interrogatories. Notwithstanding

---

[14] Interrogatory No. 16: Identify and describe in detail the way in which Defendants miscalculated your FMLA entitlement and denied and interfered with your leave as alleged in ¶ 92 of your complaint, including what leave you contend you were entitled to and did not get.

[15] Three interrogatories combined: 1) description of how Defendants miscalculated the FMLA leave entitlement; 2) description of how Defendants interfered with her FMLA leave; and 3) statement of what leave Plaintiff believes she was entitled to.

[16] Interrogatory No. 6: Describe each of the events, facts and communications which support, evidence, relate or refer to what you were told about FMLA policies, by whom and when, as described in ¶¶ 19-24, 29, 43, 90-95 of the Complaint.
Interrogatory No. 7: Describe each of the events, facts and communications which support, evidence, relate or refer to the conversion of your work schedule from full-time to part-time and approval of that schedule by Defendants, as described in ¶¶ 26-29 of the Complaint.
Interrogatory No.9: Describe each of the complaints about discriminatory or retaliatory behavior you allege to have made to Defendants including the time, date, substance of the complaint, to whom you made the complaint, location and witnesses.

6

the Defendants' dissatisfaction with Plaintiff's responses, there is no additional information Plaintiff can provide.

b. Interrogatory **No. 4**[17] – This interrogatory calls for Ms. McFadden to state the facts, events and communications concerning her leave from work. Again, Ms. McFadden answered this interrogatory to the best of her ability by specifying the dates and circumstances under which she took leave from work and attaching a copy of a Firm leave record. Bates 027. After Defendants indicated that they did not accept Ms. McFadden's reliance on the Firm's leave record, she supplemented her answer on August 4, 2006, stating every date that she could recall taking leave from work. Ex. 3. Once more, all other events and communications concerning her leave are already delineated in the Complaint at ¶¶ 19-33, 37-39, 43-46. Therefore, there exist no more facts or information that are responsive to this interrogatory.

c. **Interrogatory No. 8**[18] – This interrogatory asks Ms. McFadden to identify the harassing comments made by Defendant Riley-Jamison. Ms. McFadden fully answered this interrogatory and incorporated the detailed allegations in her complaint that clearly specify the nature of the statements made to her that she found to be harassing.

Complaint ¶ 32 states:

> While working part-time, Ms. Riley-Jamison and other Ballard Spahr partners/employees subjected Ms. McFadden to harassing comments regarding her husband's terminal illness, that she believed were designed to coerce her into coming back to work full-time. These statements included: that Ms. McFadden's daughters should

---

[17] Interrogatory No. 4: Identify and describe each of the events, facts and communications which support, evidence, relate or refer to your requests for leave, as described in ¶ 21-29, 37, 39, 43-45 of the Complaint.
[18] Interrogatory No. 8: List and describe each of the harassing comments you allege to have been subjected to in the Complaint including the time, date, speaker, comment, location and witnesses.

> quit college to care for their father, instead of her; and that she should just put her husband in hospice since he only has 4 to 6 months to live anyway. In March 2003, Mr. Henck instructed Ballard Spahr System Administrator, Janet Craig to contact Ms. McFadden at home to tell her to put her husband in hospice and to sell her property to finance his hospice care.

Hence, Ms. McFadden has delineated in her answer the harassing statements and comments she observed. No order to compel is warranted.

d. Interrogatory **No. 10**[19] – Defendants seek an order compelling Ms. McFadden to provide a precise date upon which she became disabled. This, however, she cannot do. In her supplemental response, Ms. McFadden provided the best answer she could supply given her lack of medical training, by answering: "Since I am not a medical professional, I cannot say with certainty when the onset of my medical conditions occurred. I can state, however, that I began experiencing impairments in early 2002." Ex. 3. Ms. McFadden's answer is truthful and complete to the best of her knowledge and ability. Defendants' attempt to compel more form her is, therefore, gratuitous.

e. **Interrogatory No. 11**[20] - Defendants seek to compel Ms. McFadden to specify when in the year 2004 she could have performed the job of receptionist. This demand is incongruous in that they did not ask Ms. McFadden to provide such an answer. Further, the only time period relevant to Ms. McFadden's failure to accommodate claim are the months and days in the year 2004leading up to her termination, which became effective

---

[19] Interrogatory No. 10: Identify and describe when and how you became disabled as alleged in ¶¶ 36, 38-39, 71, 73, 76, 82 of the Complaint including a description of what you were able to do, what
activities you were not able to do, how you were not able to do the activities, and to what
illness/medical condition you attribute your inability to undertake the activity.

[20] Interrogatory No. 11: Identify and describe what type of position you contend that you could perform during 2004, including a description of what the job responsibilities are and state whether you could perform them.

May 14, 2004. Accordingly, whether Ms. McFadden could work as a receptionist in October 2004, for example, is irrelevant. Moreover, when the Defendant Firm advised Ms. McFadden that her leave had expired and would be discharged in March 2004, she requested to be reassigned to the position of receptionist and, therefore, believed that she could perform the essential functions of that position *at that time*, despite her disability. Under the American With Disabilities Act and D.C. Human Rights Act, the Defendants then had an obligation to engage in an interactive process with Ms. McFadden to find out her limitations and abilities and what reasonable accommodation could be offered her to allow her to remain employed. This, the Defendants did not do. Hence, obtaining an additional statement *from Ms. McFadden* concerning when she was physically able to be reassigned to a vacant position, beyond that which she requested from the Defendants and answered in response to Interrogatory No. 11.

f. **Interrogatory No. 12**[21] – Defendants raise a frivolous challenge to Ms. McFadden's response to this interrogatory, which calls for a description of the conversation she had with Firm personnel regarding her termination. Defendants claim to be unable to comprehend the following answer regarding the receptionist position: "I asked why I could not do the receptionist job because Ms Betty Ann Hahn was out on disability. They had a temp working in that position. Ultimately Ms Betty Ann passed away on October 16, 2004. I understand the Firm hired Ms Hahn as a permanent replacement on October 21, 2004 the day of her funeral." Ex. 1. Although this confusion could have simply been addressed during a deposition and certainly does not warrant an order to compel, Ms.

---

[21] Interrogatory No. 12: Describe as precisely as you can the conversation regarding your termination referenced in ¶¶ 46-48 of the Complaint, including time, location, participants and content of the conversation.

McFadden will clarify that the she understands that the Firm hired a replacement *for* Betty Ann Hahn, the receptionist, the day of her funeral. With this, Plaintiff believes the Defendants' Motion on this point is moot.

g. **Interrogatory No. 13[22]** - Defendants contest Plaintiff's answer to this interrogatory, which concerns the difficulty Ms. McFadden experienced applying for Long Term Disability (LTD) Benefits. In their Motion, Defendants misstate that Ms. McFadden "[has] no knowledge or recollection of any phone conversations (or any other conversations) other than that there were many of them." Mot to Compel at 5. In truth, Ms. McFadden answered that "I cannot remember date and time of verbal conversations because there were so many phone calls during the period of February 2003 up until my disability was approved in September 2005." Ex. 1. As stated, there were many communications between Ms. McFadden and Ballard Spahr and Unum regarding LTD benefits – some in writing, which were produced, and others over the telephone. Ms. McFadden cannot be expected to recall with specificity, as requested in the interrogatory, the statements made during these conversations. She can and does recall, however, the arduous nature of her efforts to obtain LTD benefits. If Defendants wish to exhaust Ms. McFadden's memory about specific statements made during her verbal communication with Unum or Ballard Spahr regarding these benefits, they will have the opportunity to do so, when they depose Ms. McFadden. She is presently unable to recall

---

[22] Interrogatory No. 13: With respect to each instance of "haranguing and misinformation provided by Ballard Spahr and Unum" as alleged in ¶ 49 of the Complaint, please:
    (a)    set forth in detail a description of same;
    (b)    identify the persons with knowledge of facts;
identify all documents which evidence, support, refer or relate to such facts.

them. Ms. McFadden is not attempting to be evasive; there simply are limits to what she, or any individual, can recollect.

h. Interrogatory **No. 16**[23] – This interrogatory asks Ms. McFadden to explain how the Defendants miscalculated her FMLA entitlement. As Plaintiff explained while conferring about this with the Defendants on this point, she cannot state under penalty of perjury what actions the Defendants took when calculating her leave entitlement. She has no personal knowledge about their actions but knows only that she did not receive the leave she was entitled to under law. In addition, the Defendants interfered with her leave by misinforming her about her leave entitlement, instructing her to return to work prematurely and harassing her about her time off to care for her husband, as specified in Complaint ¶¶ 20, 23, 24, 28, 29, 30, 32, 33. Ms. McFadden need not supplement her answer further, since no additional facts are available to provide.

i. **Interrogatory No. 22**[24] – Plaintiff and Defendants conferred regarding this interrogatory, which requests information regarding income Plaintiff has received since her termination. Plaintiff originally contested this request under the collateral source doctrine but indicated that she would consider Defendants' arguments to the contrary and advise them. Before Plaintiff did so, Defendants filed the instant Motion. Plaintiff will answer this interrogatory.

---

[23] Interrogatory No. 16: Identify and describe in detail the way in which Defendants miscalculated your FMLA entitlement and denied and interfered with your leave as alleged in ¶ 92 of your
complaint, including what leave you contend you were entitled to and did not get.

[24] Interrogatory No. 22: Set forth all income or unemployment compensation you have received since that date, identify the source of same, identify each of your employers since that date and identify
your position and the rate of your compensation whether salaried, commissioned, hourly or
otherwise.

## C. Ms. McFadden Has Produced All Relevant Documents Properly Requested by the Defendants, Thus Their Motion to Compel Plaintiff To Produce additional Documents is Unjustified.

### *1. Defendants propounded a wildly inordinate number of document production requests that run afoul of the principles of focused, efficient discovery.*

The Defendants propounded 95 document production requests upon Plaintiff McFadden. Although the Federal Rules of Civil Procedure prescribe no numerical limit for document production requests, parties are not implicitly authorized to propound as many requests as they choose. Rather, parties are bound by principles of efficiency and fairness, which limit the requests to a reasonable number. Because responding to these numerous requests would be unduly burdensome on Ms. McFadden, Ms. McFadden responded to a reasonable number of the requests - 30.[25]

To otherwise respond to all 95 requests would be logistically burdensome, since her response could conceivably require the production of a large volume of documents or require Ms. McFadden, in less-than-perfect health, to conduct a time-consuming search of for any and every document, which relate to any of the 95 requests. And more, it would pose an undue financial burden on Ms. McFadden to pay her counsel to review all of the documents for responsiveness, relevancy, privilege, etc. before producing them to Defendants.

Further, the shear number of the requests demonstrates the Defendants' intent to bulldoze Ms. McFadden. Despite the Defendants claim that the voluminous requests

---

[25] Once a confidentiality agreement was fully executed by the parties, Plaintiff produced to Defendants copies of all documents, per document request nos. 24 & 24, which relate to her medical condition, on August 10, 2006. Defendants indicated in their Motion that they would withdraw this aspect of their Motion; however, they have not. Notwithstanding this, since the documents have been produced, this portion of their Motion is moot.

"relate directly to the contentions made in Plaintiff's Complaint . . ." it is clear that the Defendants made no effort to hone their discovery requests. Hence, the requests are not reasonably calculated to lead to the discovery of admissible evidence, but rather are designed to bury Ms. McFadden in discovery. The Court must not permit these tactics and is asked to provide a balance between the existing financial inequities between the parties. The Defendants' request for an order compelling Ms. McFadden to respond to an *additional 65* document production requests should, therefore, be denied.

> ### 2. *Plaintiff Raised Appropriate Objections to Some of Defendants' Document Production Requests; Thus, Defendants Have Failed to Demonstrate that She Should be Compelled to Respond Further.*

    a.    **Document Request No. 64[26]** – Defendants demand that Ms. McFadden produce her state and federal tax returns from the year 1998 to the present. Plaintiff objected on several grounds, principally relevance. Ms. McFadden's relevancy objection is two-fold.

First, the document request spans beyond the time period relevant to this case. The Defendants claim to need copies of Ms. McFadden's personal tax return (and possibly that of her husband's if a joint return) to determine the extent of the economic damages she sustained as a result of her termination. The Defendants request 1998, 1999, 2000, and 2001 tax returns, which are well outside the timing of any of the events in this case. More still, Ballard Spahr did not terminate Ms. McFadden until May 2004; hence, any economic loss could not have been sustained until after this time period. Thus,

---

[26] Document Request No. 64: Any and all documents that constitute, memorialize, refer or relate to your federal and/or state tax returns (including all attachments and schedules) whether filed jointly or singly from January 1, 1998 to the present.

13

there is no factual basis for the Defendants to obtain copies of Ms. McFadden's tax returns for years before 2004.

Second, there are less intrusive and more reliable means for the Defendants to obtain evidence of Ms. McFadden's rental property equity and income and wage income than her federal and state tax return, if the Court deems it relevant. As is common knowledge, tax returns contain confidential information, such as social security numbers, and other private financial information, which bear no relevance on any issue or defense in this dispute. If the Court is of the view that Ms. McFadden's rental property equity and income is ripe for discovery at this point pre-summary judgment, Ms. McFadden can produce other records demonstrating the loss of equity and income, besides her confidential tax filings. And Plaintiff has already offered to provide copies of her W-2's for 2004 and 2005 to the Defendants to demonstrate her income. Yet, the Defendants do not believe that this is enough. The Defendants need not invade Ms. McFadden's and possibly Mr. McFadden's privacy by scouring their tax filings to verify Plaintiff's income. Thus, the Court should deny Defendants Motion to compel the production of these sensitive documents.[27]

---

[27] If the Court is inclined to order the production of any of Ms. McFadden's tax returns, she respectfully requests an *in camera* review of these documents pre-production to redact maters the Court finds irrelevant and/or confidential.

b.      **Document Request Nos. 51,[28] 66-68[29]** – Plaintiff objected to these requests because they were well over a reasonable number of requests and thus, not reasonably-tailored to obtain admissible evidence.  If, however, the Defendants are choosing these requests out of the remaining 65 for Plaintiff to respond to, as a compromise, she is willing to respond to these three additional requests, but no more, unless ordered by the Court.  Otherwise, Plaintiff relies on her argument above regarding the unreasonable number of document requests propounded by Defendants and asks the Court to reject Defendants' demand for an order to compel responses to these requests.

c.      **Document Request Nos. 89 and 90[30]** – In addition to her objections regarding the excessive amount of document production requests, Plaintiff McFadden objected to these two requests, which called for the production of all documents "submitted to and received from" the Social Security Administration (SSA) and Unum Provident (LTD carrier).  Ms. McFadden objected on the basis of the requests being overbroad and irrelevant.  Ex. 1.  To be sure, this case is not about the failure to provide employment benefits.  Rather this

---

[28] Document Request No. 51 demands the production of Cornelius McFadden's, Plaintiff's husband's, medical records.  However, Mr. McFadden's medical condition is not in dispute.  Defendants already possess medical certification of Mr. McFadden's terminal condition as Ms. McFadden supplied it to her employer on or about November 13, 2002.  These documents were accepted by Defendant Ballard Spahr at that time.  Additionally, Plaintiff did produce a copy of this certification in her June 22, 2006 production at Bates 022-025.  To compel Ms. McFadden to produce additional, extensive medical records concerning her husband's terminal cancer, which as been treated for several years, would be unduly burdensome, wholly unnecessary, and most importantly, an unwarranted invasion of private medical information.

[29] Document Request No. 66:  Any and all documents that constitute, memorialize, refer or relate to any facts that support or evidence facts that tend to prove that you were treated in a disparate and/or discriminatory manner compared to non-disabled employees or Caucasian employees.
Document Request No. 67: Any and all documents which constitute, memorialize, refer or relate to any and all claims of discrimination or lawsuits you have made or filed against any current or former employer.
Document Request No. 68: Any and all documents which constitute, memorialize, refer or relate to any and all administrative claims or lawsuits of any nature you have filed or which have been filed against you.

[30] Document Request 89: Any documents submitted to or received from the Social Security Administration relating to a claim for social security or disability benefits.
Document Request 90: Any documents submitted to or received from Unum Provident relating to your claim for disability benefits.

15

case concerns an employer's willful failure to provide leave and reasonable accommodation and unlawful discharge of a long-time, dedicated worker, who became disabled. What steps she took to survive financially after her unlawful termination are of little consequence to the central question before the factfinder in this case: what motivated the Defendants' denial of leave and accommodation and termination of Ms. McFadden?

While the Defendants are correct that Courts may consider a plaintiff's contrary representations regarding his or her ability to work when obtaining SSI benefits, this is not a *per se* bar to a finding of disability discrimination. Where, as in Ms. McFadden's case, a plaintiff has a good-faith belief that, without a reasonable accommodation from the employer, she was unable to work, a jury could nonetheless conclude that representations to obtain disability benefits were consistent with an ADA claim for failure to accommodate. *Voeltz v. Arctic Cat, Inc.* 406 F.3d 1047 (8th Cir. 2005). Thus, any document which Defendants may herald as containing contrary representations made by Ms. McFadden regarding her ability to work is in no way dispositive, as the Defendants would have this Court believe.

Nevertheless, because Plaintiff acknowledges that such representations may be relevant, she is willing to provide copies of documents she submitted to SSA and Unum that contain her statements regarding her conditions and/or ability to work. This compromise is reasonable given the state of law on this point. Consequently, no order to compel is necessary, but Plaintiff will await the Court's ruling on Document Request Nos. 89 and 90.

### D. PLAINTIFF HAS ALREADY PROVIDED A COMPLETE DAMAGES CALCULATION AND HAS NOT FAILED TO PRODUCE DOCUMENTS UPON WHICH THE CALCULATION IS BASED.[31]

In their Motion, the Defendants mention to the Court that Ms. McFadden did not provide her Initial Disclosures by the parties agreed-upon date for production – March 30, 2006.  Defendants neglect to mention to the Court, however, that Ms. McFadden requested in her Joint Meet & Confer Statement to dispense with the Rule 26 requirement that she provide a damages calculation.  Jnt Meet & Cnf. Stmt at 6-7.  The Court then issued a Scheduling Order not granting Plaintiff's request to be relieved of this requirement on June 30, 2006.  Subsequently, Plaintiff supplemented her Initial Disclosures with her damages calculation.  Ex. 4.  Thus, the timing of Plaintiff's disclosure of her calculation of damages was reasonable in light of her prior submission to the Court.

Defendants now complain that Ms. McFadden did not specify "how" she calculated her damages.  Yet, Rule 26(a)(1)(C) requires a plaintiff to provide a "computation" of categories of damages.  And this, Ms. McFadden did by calculating or "computing" her total back pay, lost benefits, lost rental income per month, etc. See Ex. 4.  Thus, the Court must again reject Defendants baseless complaints about Plaintiff's alleged failure to provide information that she is not required by governing discovery rules to provide.

---

[31] It should be brought to the Court's attention that the Defendants have never conferred with Plaintiff on this point.  If they had, Defendants perhaps would have learned that Plaintiff computed her damages based on dollar amounts known to her, not documents; thus, she has not "failed" to produce any such documents used to calculate her damage computations.

17

### III.   CONCLUSION

At its essence, the Defendants' Motion to Compel begs the Court to order Plaintiff Vanessa McFadden to go above beyond the Federal Rules of Civil Procedure and bounds of reasonableness to provide answers and/or documents, which largely do not exist. Contrary to Defendants' characterization, Ms. McFadden has not unreasonably refused to provide any discovery response.  Defendants have failed in their Motion to not only justify any request for sanctions[32] but have also failed to justify the issuance of an order compelling Ms. McFadden to produce further supplements to her discovery responses. At some point, a party must accept the answer that is given, because no additional information can be had.  Here, we have reached that point. Therefore, Plaintiff respectfully requests that the Court deny Defendants' Motion to Compel in its entirety.

Respectfully submitted,

Dated: August 17, 2006						By**:**_____**/s/**_____
        Teresa W. Murray
        Bar No. 460430

THE LAW OFFICES OF T.W. MURRAY, LLC
1111 Bonifant Street
Silver Spring, Maryland 20910
Phone: 301-585-1870
Fax: 301-585-1871

Counsel for the Plaintiff

---

[32] If any party will be required to pay sanctions regarding these discovery disputes, the Defendants should be required to pay Ms. McFadden reasonable attorney's fees for filing this Opposition in response to a Motion, which prematurely and baselessly called for an Order to Compel.