LAW OFFICES
# BALLARD SPAHR ANDREWS & INGERSOLL, LLP

1735 MARKET STREET, 51ST FLOOR
PHILADELPHIA, PENNSYLVANIA 19103-7599
215-665-8500
FAX: 215-864-8999
WWW.BALLARDSPAHR.COM

BALTIMORE, MD
CAMDEN, NJ
DENVER, CO
SALT LAKE CITY, UT
VOORHEES, NJ
WASHINGTON, DC

JOHN T. DIBATTISTA
DIRECTOR OF HUMAN RESOURCES
DIRECT DIAL: 215-864-8313
PERSONAL FAX: 215-864-9069
DIBATTISTAJ@BALLARDSPAHR.COM

March 9, 2004

Via Certified Mail

Ms. Vanessa A. McFadden
3457 Massachusetts Avenue, SE
Washington, DC 20019

Dear Vanessa:

I hope this letter finds you coming along in your recovery.

As was communicated to you in previous correspondence, your absence from work thus far has been covered under the Family and Medical Leave Act (FMLA). FMLA entitles eligible employees to a maximum of 12 weeks of job protected medical leave during any 12 month period. (**NOTE**: DC employees are entitled to a maximum of 16 weeks of job protected medical leave during any 24 month period). As such, your leave of absence under the FMLA expired February 4, 2004.

Recognizing that you may not yet be able or ready to return to work, the firm does permit a non-FMLA covered leave of absence for up to an additional 3 months of time. If you apply and are approved for this extension of leave keep in mind that there is no job protection during this period nor is there a guarantee that a position will be available if and when you are ready to return to work. You can apply for this extension by completing the enclosed "Request for Non-FMLA Leave of Absence" form and returning it to your supervisor.

If at the expiration of the extended leave of absence you are still unable to return to work, your employment with Ballard Spahr will terminate. If in the future you are able to return to work you may apply for any available position within the firm for which you are qualified to fill.

Your benefits coverage has been continued by the firm through the period of your FMLA covered leave of absence during which time you were responsible for your employee contribution. If you are extending your leave beyond this period you are eligible to continue coverage in the firm's group health plan by paying 100% of the premium.

Ms. Vanessa A. McFadden
March 9, 2004
Page 2

If you are unable to return to work beyond the 3 month extension you can elect to continue your health coverage under the terms of the Consolidated Omnibus Budget Reconciliation Act (COBRA). Information regarding COBRA and continuation of your health coverage will be sent to you under separate cover.

Vanessa, on behalf of the firm we wish you well and hope for a speedy recovery. Please feel free to contact me if there is anything we can do.

Sincerely,

*[signature]*

John T. DiBattista
Director of Human Resources

JTD/sb

cc: Fern Forman, Benefits Manager
    Meg Riley-Jamison



### BALLARD SPAHR ANDREWS & INGERSOLL, LLP

# MEMORANDUM

**TO:** Vanessa McFadden

**FROM:** Fern H. Forman

**DATE:** September 29, 2003

**RE:** <u>Long Term Disability – staff</u>

For ease of reference, your benefits under the Firm's disability policy are outlined below. Attached are:

- Family & Medical Leave Act ("FMLA") Policy
- Long Term Disability ("LTD") Policy
- Request for Leave Questionnaire – please have your doctor complete and return to me

The following dates summarize your disability coverage under the Ballard Spahr Andrews & Ingersoll, LLP Long Term Disability Plan. Assuming your last day of work will be 10/15/2003; our disability coverage is as follows:

| | | |
|---|---|---|
| Day 1 – Day 30 (elimination period) | 0% compensation from Ballard Spahr | 10/16/2003 - 11/14/2003 |
| Day 31 – Day 90 | 60% compensation from Ballard Spahr | 11/15/2003 - 1/13/2004 |
| Day 91 forward | 60% compensation from UNUM (our LTD carrier) (0% compensation from Ballard Spahr) | 1/14/2004- ?? (if medically necessary) |
| FMLA Coverage | | 10/16/2003 - 1/7/2004 |

During your elimination period (day 1 to day 30 of disability), vacation/sick/ personal holidays will accrue. During the next 60 days (day 31 to day 90 of disability), vacation/ sick/personal holidays do not accrue. Accruals will begin again once you return to work. Firm holidays are paid during the elimination period only.

As of the end of the elimination period, you will have accrued 34.00 days in 2003 [20.00 vacation, 10.00 sick, 2.00 personal, 2.00 optional holiday]. Our records show that you have taken 34.00 days in 2003 [20.00 vacation, 10.00 sick, 2.00 optional holiday, 2.00 personal days]. This provides you with no additional time to use while you are out of the office.

In the event you are absent from work beyond 90 calendar days, your next scheduled annual review and pay adjustment will be deferred by the amount of time absent in excess of the 90 day period.

**Be sure to bring a doctors note (releasing you to work) when you return. Also, be sure to let me know when you have returned to the office so that I can alert payroll.**

I hope this is a short-term leave and that you are back to work quickly! If you have any questions, please feel free to call me at 215-864-8914.

cc: Mary Jane Massott
    Cindy Aldinger
    Meg Riley-Jamison
    Wendy Iversen
    Joanne Edwards

BALLARD SPAHR ANDREWS & INGERSOLL, LLP

# MEMORANDUM

TO: Vanessa McFadden

FROM: Fern H. Forman

DATE: 9/29/03

RE: **Family Medical Leave Act ("FMLA") Policy**

Ballard Spahr Andrews & Ingersoll, LLP has adopted this policy to implement the terms of the Family and Medical Leave Act of 1993. Eligible employees are entitled to family and medical leave on the terms and conditions stated in this policy, the regulations issued by the Department of Labor under the FMLA and in Ballard Spahr Andrews & Ingersoll, LLP's ("Ballard Spahr") other applicable leave policies.

## A. DEFINITIONS

For purposes of this policy, the following definitions apply:

1. "Eligible Employee" means an individual who has been employed by Ballard Spahr for at least 1,250 hours during the preceding 12-month period.

2. "FMLA Leave" means leave, which qualifies under the Family and Medical Leave Act of 1993 and the Department of Labor's regulations and is designated by Ballard Spahr as so qualifying.

3. "Leave Year" means the rolling 12 month leave period measured backward from the date each employee's leave commences.

4. "Serious Health Condition" means an illness, injury, impairment or physical or mental condition that involves either inpatient care or continuing treatment by a health care provider. It generally includes a period of incapacity due to pregnancy, prenatal care, a chronic health condition, a permanent or long-term health condition, or restorative or preventative treatment. For a more detailed definition of the conditions that qualify as serious health conditions, see the Certification of Health Care Provider form available from Ballard Spahr's Benefits Manger (Philadelphia x3914).

## B. ENTITLEMENT TO LEAVE

An Eligible Employee is entitled to a total of 12 workweeks of leave during each Leave Year in the event of one or more of the following:

1. The birth, adoption or foster care placement of a son or daughter of the employee and to care for such child. (Leave must be taken during the 12-month period following the birth or placement.)

2. A Serious Health Condition of a spouse, qualified domestic partner, son, daughter or parent of the employee if the employee is needed to care for such family member.

3. A Serious Health Condition of the employee that makes the employee unable to perform any one or more of the essential functions of his or her job.

Any leave taken under one or more of these circumstances will be counted against the employee's total entitlement for that Leave Year.

**Ballard Spahr Andrews & Ingersoll, LLP**
**Family Medical Leave Policy (con't)**

### G. CONTINUATION OF GROUP HEALTH BENEFITS

Ballard Spahr will maintain the employee's coverage under a group health plan during the period of FMLA Leave under the same terms and conditions as though the employee were actively working. During the leave, the employee will be required to continue to make all premium payments that he/she otherwise would have had to make if actively employed. Where feasible, Ballard Spahr will advise the employee concerning the necessary arrangements for such payments prior to the commencement of the leave. If the employee fails to return to work following the expiration of FMLA Leave for a reason other than a Serious Health Condition or circumstances beyond the employee's control, Ballard Spahr will be entitled to the repayment by the employee of any premiums paid by Ballard Spahr during the leave. Failure to make timely premium payments may result in the termination of coverage.

### H. CONTINUATION OF OTHER BENEFITS

Consistent with Ballard Spahr's other leave policies, coverage under the following benefit plans or policies will continue under the terms and conditions stated below during the FMLA leave:

| | |
|---|---|
| Life Insurance   Full Firm Premium | |
| Lifestyle Protection Insurance | Full Firm Premium |
| Long Term Disability | Full Firm Premium |

### I. RETURN TO WORK

**Consistent with Ballard Spahr's practice, before returning to work following a medical leave due to the employee's Serious Health Condition (except for intermittent or reduced schedule leave), the employee will be required to present a certification from his/her health care provider that the employee is medically able to resume work.** If the date on which an employee is scheduled to return to work from an FMLA Leave changes, the employee is required to give notice of the change, if foreseeable, to Ballard Spahr within two business days of the change.

Subject to the limitations below, an employee returning from FMLA Leave will be restored to the position of employment held when the leave commenced or to an equivalent position. Job restoration may be denied if conditions unrelated to the FMLA Leave have resulted in the elimination of the employee's position, or if the employee qualifies as a "key employee" (generally the highest paid 10% of the workforce). Key employees may be denied job restoration if it would cause substantial and grievous economic injury to Ballard Spahr, in which case the key employee will be notified of this decision.

### J. QUESTIONS

Questions about this policy or eligibility for FMLA Leave should be directed to Ballard Spahr's Benefits Manager, Fern Forman, at (215) 864-8914.

BALLARD SPAHR ANDREWS & INGERSOLL, LLP

# MEMORANDUM

TO: *Vanessa McFadden* (signature)

FROM: Fern H. Forman

DATE: 9/29/03

RE: <u>Long Term Disability ("LTD") Policy</u>

This plan is designed to provide a means of partial income replacement in the event that an employee is out of work for an extended period of time due to a medical disability.

I. **Definition of Disability**

　A. **Full Disability**

　　An employee is considered fully disabled under Ballard Spahr Andrews & Ingersoll, LLP's Plan if, due to injury or illness, the employee is unable to perform each of the material duties of his or her regular occupation. In addition, after benefits have been paid for 24 months, the employee is unable to perform any of the material duties of any gainful occupation for which he or she may reasonably be suited by training, education or experience.

　B. **Partial Disability**

　　An employee must first qualify for full disability before he/she can qualify for partial disability. An employee is considered partially disabled under Ballard Spahr Andrews & Ingersoll, LLP's Plan if, due to illness or injury, the employee is unable to perform all of the material duties of his or her pre-disability occupation on a full time basis. In addition, he or she is performing at least one of the material duties of his or her regular occupation on a part-time or full-time basis, and is earning at least 20% less per month than pre-disability earnings indexed for inflation.

II. **Determination and Verification of a Disability**

　　The employee's physician must determine the nature and duration of any disability. In order to receive disability benefits, the employee must submit written verification from his or her physician certifying that the employee qualifies as disabled as it is defined above. Upon request, the employee must continue to provide such certification of the disability at his or her own expense. The insurance company may require an evaluation by a physician of its choice to verify disabilities.

III. **Principal Provisions of the Plan**

　　The principal provisions of Ballard Spahr Andrews & Ingersoll, LLP's ("Ballard Spahr") disability program is as follows:

　A. **Pre-existing Conditions**

　　The Disability Plan does not provide coverage for disabilities arising within the first 12 months following the effective date of coverage from pre-existing conditions. A pre-existing condition is defined as a sickness or injury for which an employee, in the 3-month period prior to the date the employee's coverage became effective, either received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines. Coverage generally becomes effective on the first day of the month following the date of hire.

LTD Policy (con't)

    E. **Benefit Payment Period**

        For disabilities commencing prior to age 60, benefits are paid at a rate of 60% through the disabled employee's 65th birthday.

        For disabilities commencing after age 60 but before age 65, the duration of benefits declines on a sliding scale, as shown below:

| Age at Disability | Maximum Benefit Period |
|---|---|
| 61 | 60 months |
| 62 | 48 months |
| 63 | 42 months |
| 64 | 36 months |
| 65 | 30 months |
| 66 | 24 months |
| 67 | 21 months |
| 68 | 15 months |
| 69 and over | 12 months |

    F. **Offsets**

        Benefits payable by UNUM under the disability policy are reduced by the amount of any primary and family social security disability benefits received by a disabled employee, any Workmen's Compensation benefits received by a disabled employee, and/or any income earned by a disabled employee.

    G. **Indexing**

        Disability income payable by the insurance company will increase by 4% per year, representing a cost of living adjustment.

    H. **Termination of Employment**

        Coverage under the Firm's Disability Plan ends upon separation from employment with Ballard Spahr.

IV. **Impending Disabilities**

    Any employee with knowledge of an impending disability must notify the Benefits Manager as soon as is reasonably possible. This includes, but is not limited to, pregnancy. Forms for this purpose are available from the Benefits Administrator, and should be completed and signed by both the employee and physician. All information regarding disability is maintained in Ballard Spahr confidential medical files.

V. **Enrollment and Cost**

    Enrollment in the Disability Plan is mandatory. A $3.25 co-pay is deducted from all employee's semi monthly paychecks as a contribution to the insurance premium. This contribution is deducted from after-tax income. Disability benefits received are non-taxable to the extent they are attributable to premiums paid by the employee. Therefore, in part, disability benefits received from UNUM are not fully taxable. In recent years, approximately 80% of the benefits have been taxable to the recipients.

    All employees must complete the enrollment card, including the PRE-EXISTING CONDITION EXCLUSION notice, to ensure proper coverage under the Plan at time of hire.

LTD Policy (con't)

### VII. When UNUM Insurance Company (LTD Carrier) Becomes Payor

UNUM Insurance Company takes over as direct payor of the employee's disability income replacement (60% of compensation) on the 91st day of a disability.

#### A. How Benefits are Affected the First 6 Months

When UNUM takes over as payor, all medical related benefits will continue for the first 6 months while the employee is paid by UNUM at 60% of their compensation. The employee must continue to pay their current bi-weekly payroll deductions for all medical related benefits. Checks should be made payable to Ballard Spahr and sent directly to the Benefits Administrator by the first of each month.

#### B. How Benefits are Affected after 6 Months - COBRA

Employment with Ballard Spahr is severed 6 months after UNUM commences as payor. All Health and Welfare benefits with Ballard Spahr will also be terminated at this time.

Once employment has been severed, the employee will be eligible to continue medical coverage under the guidelines of COBRA for a period of up to 29 months from the date of termination. Information regarding COBRA will be sent to the employee's home address upon termination of employment by certified mail, return receipt requested. Please refer to Benefits Section 3-19 for detailed information about COBRA.

Under the guidelines of COBRA, Ballard Spahr will contribute 50% of the medical premium, up to a maximum of $100 per month, for the duration of continued coverage. The employee will be responsible for the remaining balance of the COBRA premium. Checks should be made payable to Ballard Spahr and sent directly to the Benefits Administrator by the first of each month.

COBRA terminates on the date that the terminated employee is approved for Medicare.

BALLARD SPAHR ANDREWS & INGERSOLL, LLP

# MEMORANDUM

TO: *Vanessa McFadden* (signature)
FROM: Fern H. Forman
DATE: 9/29/03
RE: <u>Request for Leave of Absence</u>

## INSTRUCTIONS

*Please read and follow these Instructions carefully. Failure to provide all applicable information may result in the denial of requested leave benefits.*

The employee named above has applied for leave benefits under Ballard Spahr Andrews & Ingersoll, LLP's Family and Medical Leave Policy and/or Long-Term Disability Benefits Policy.

SECTION I: The employee must provide all requested information and sign this section.

SECTION II: The patient's Health Care Provider must provide all applicable information and sign this section. If handwritten, the information must be legible. A Health Care Provider is defined in the regulations under the Family and Medical Leave Act. If an employee has a question about whether a treating medical professional qualifies as a Health Care Provider, he/she should contact the Ballard Spahr Andrews & Ingersoll, LLP's Benefits Administrator.

SECTION III: The employee's licensed and qualified physician must provide all applicable information and sign this section. If handwritten, the information must be legible. The Health Care Provider completing Section II may complete Section III as well if he/she is a licensed and qualified physician, as required under Ballard Spahr Andrews & Ingersoll, LLP's Long-Term Disability Policy.

DATE MEDICAL CERTIFICATION MUST BE RETURNED: __11/15/03__

Return this form to:   Fern Forman
                       Benefits Administrator
                       Ballard Spahr Andrews & Ingersoll, LLP
                       1735 Market Street, 51st Floor
                       Philadelphia, PA 19103

BALLARD SPAHR ANDREWS & INGERSOLL, LLP

# MEMORANDUM

TO: Vanessa McFadden

FROM: Fern H. Forman

DATE: November 1, 2002

RE: <u>Family Medical Leave</u>

  Meg has informed me that you are in need of time off to care for your husband. I was so sorry to hear of his illness. Attached are:

- Family & Medical Leave ("FMLA") Policy

- Request for Leave Questionnaire – please have your husband's doctor (whichever one you feel is most appropriate to complete this) complete this questionnaire and return to me in Philadelphia.

  The following dates summarize your family medical leave under the Ballard Spahr Andrews & Ingersoll, LLP Family & Medical Leave Policy. Your leave began Thursday, October 17th:

| FMLA Coverage | 0% compensation from Ballard Spahr (except as defined below) | 10/17/2002 – 1/8/2003 |
|---|---|---|

  You have accrued 34 days in 2002 [20 vacation, 10 sick, 2 optional holiday, 2 personal days]. In addition, our records show that you did not roll over any days from 2001. Lastly, our records show that you have taken 32 days thus far in 2002 [18 vacation, 10 sick, 2 optional holiday, 2 personal days]. Therefore, you have 2 days available to provide compensation during your leave.

  Using the days above, you will receive 100% compensation from 10/17 – 10/18. If, however, you sign and return the Vacation/Sick Time Memorandum enclosed we will advance you time from 2003 and extend the period of time you will receive 100% compensation to 11/1. Days will begin to accrue again once you return to the office.

  My thoughts are with you. Please let me know when you have returned to the office. If any of these dates change or you have any questions, please feel free to call me at 215-864-8914.

FHF

cc: Mary Jane Mastorri
  [illegible]
  [illegible]

Nov-13-02    10:32am    From-ballard spahr andrews & ingersoll            202 661 7613           T-117   P.002/007   F-632

## BALLARD SPAHR ANDREWS & INGERSOLL, LLP
## MEMORANDUM

TO: *Vanessa McFadden*

FROM: Fern H. Forman

DATE: 10/30/02

RE: Request for Leave of Absence

### INSTRUCTIONS

*Please read and follow these Instructions carefully. Failure to provide all applicable information may result in the denial of requested leave benefits.*

The employee named above has applied for leave benefits under Ballard Spahr Andrews & Ingersoll, LLP's Family and Medical Leave Policy and/or Long-Term Disability Benefits Policy.

SECTION I: The employee must provide all requested information and sign this section.

SECTION II: The patient's Health Care Provider must provide all applicable information and sign this section. If handwritten, the information must be legible. A Health Care Provider is defined in the regulations under the Family and Medical Leave Act. If an employee has a question about whether a treating medical professional qualifies as a Health Care Provider, he/she should contact the Ballard Spahr Andrews & Ingersoll, LLP's Benefits Administrator.

SECTION III: The employee's licensed and qualified physician must provide all applicable information and sign this section. If handwritten, the information must be legible. The Health Care Provider completing Section II may complete Section III as well if he/she is a licensed and qualified physician, as required under Ballard Spahr Andrews & Ingersoll, LLP's Long-Term Disability Policy.

DATE MEDICAL CERTIFICATION MUST BE RETURNED: 11/21

PLEASE RETURN TO:    Fern Forman
Benefits Administrator
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103