UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Vanessa A. McFadden, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Ballard Spahr Andrews and )<br>Ingersoll, LLP, *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 1:05CV02401<br>Judge Richard J. Leon |

### DECLARATION OF MARGARET RILEY-JAMISON

I, Margaret Riley-Jamison, under penalty of perjury under the laws of the United States of America, do declare the following as true and correct to the best of my knowledge, information and belief.

1. I am the human resources manager for the Washington D.C. office of Ballard Spahr Andrews and Ingersoll, LLP ("Ballard Spahr").

2. In 2003, Vanessa McFadden was employed as a legal secretary by Ballard Spahr. She was given a modified schedule to help her husband during his cancer treatments. During this time period, Ms. McFadden accrued salary and benefits as a full-time employee even though she only worked part time.

3. Unlike all other employees who worked less than full-time, Ms. McFadden's employment status was never converted from full-time to part-time. Ms. McFadden was allowed to work part-time without a decrease in salary. For example, Christie Hearn lost full-time status, including medical insurance and benefits, when she requested a modified work schedule and became an hourly employee.

4. By November, 2002, Ms. McFadden had exhausted her paid leave. Because Ms. McFadden had been employed by Ballard Spahr for so many years, the firm advanced her ten days from the paid leave to which she would be entitled in 2003. This was the first time Ballard Spahr's D.C. office had ever advanced a non-exempt employee that amount of paid leave.

5. For the second time, in 2003, Ballard Spahr advanced Ms. McFadden paid leave of ten days of paid leave from 2004. The two occasions in which Ballard Spahr advanced ten days of paid leave to Ms. McFadden are the only times Ballard Spahr's D.C. office ever has advanced such a substantial amount of leave to a non-exempt employee.

EXHIBIT 2

6. On multiple days in 2003 when Ms. McFadden came to work while sick, she was allowed to leave early without her early departure being counted against her. As a result, Ballard Spahr gave Ms. McFadden credit for a full day's work.

7. Although Ms. McFadden had used most of her available FMLA leave during 2002 and 2003 for the illnesses of herself and her husband, Ballard Spahr decided to restart the clock on October 15, 2003, and give Ms. McFadden sixteen weeks of medical leave under the D.C. FMLA from October 15, 2003.

8. Ms. McFadden was offered a position in the administrative department ("ARC") when her leave expired. These were the only positions at Ballard Spahr where an employee could work intermittently.

9. In May of 2004, the receptionist position was held by Betty Ann Hahn and was not vacant.

10. I was on maternity leave from June 25 through October 13, 2003, two days before Ms. McFadden left on long term disability leave. During my maternity leave, I had no contact with Ms. McFadden.

11. Typically, Ballard Spahr pays 80% of the disability insurance premium while the employee contributes 20%. In the case of Ms. McFadden, Ballard Spahr paid 100% of her disability insurance premium from January, 2004, through her termination.

12. Ms. McFadden's disability leave began on October 15, 2003. Ballard Spahr paid her 60% of her salary from November 15, 2003 through January 15, 2004. Afterwards, it is the responsibility of UnumProvident, the insurance carrier, to compensate the employee.

13. After Ms. McFadden's application was initially denied by UnumProvident, Ballard Spahr took steps to assist Ms. McFadden, and convinced UnumProvident to provide her with disability payments under a reservation of rights.

14. Ballard Spahr also provided Ms. McFadden with salary advancements, which she never repaid.

15. Ballard Spahr also added a new accelerated death benefits provision to its insurance policy in order for Ms. McFadden to use it.

9.6.07
DATE

MARGARET RILEY-JAMISON