# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Vanessa A. McFadden,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:05CV02401** |
| | ) | **Judge Richard J. Leon** |
| **Ballard Spahr Andrews and** | ) | |
| **Ingersoll, LLP,** *et al.***,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

In seeking to avoid summary judgment being entered in favor of Defendants Ballard Spahr Andrews and Ingersoll, LLP ("Ballard Spahr") and Margaret Riley-Jamison ("Riley-Jamison"), plaintiff, Vanessa McFadden ("McFadden"), makes a number of assertions that have no support in the record and continues to contend that she was discriminated against on the basis of her disability and race, and denied FMLA leave, based solely upon her own subjective beliefs.[1] Conspicuous by its absence in McFadden's opposition papers is any admissible evidence that would create any genuine issues of material fact to preclude summary judgment from being entered against her. Indeed, in her opposition papers, McFadden makes a number of key admissions that spell the death knell of her claims in this case.

## I. THERE ARE NO CRITICAL QUESTIONS FOR A JURY TO DETERMINE

---

[1]     Accompanying this reply memorandum as Exhibit A is a table setting forth the numerous statements in Plaintiff Vanessa McFadden's Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Opposition") that are not supported by the record. Defendants request that the court disregard McFadden's statements in her opposition that have no record support.

McFadden's Opposition asserts that her case presents three critical questions: (1) whether Defendants violated the FMLA by purportedly failing to provide her with accurate notice of her leave rights? (2) whether the Defendants' actions in dealing with leave and schedule modifications and terminating her employment were motivated by her race and/or her disability? and (3) whether terminating McFadden after her leave expired was retaliatory?  As set forth below, the undisputed facts confirm that the answer to each of these questions is no.

First, McFadden admits that she received more leave than required under the FMLA.  See Plaintiff Vanessa McFadden's Responses to Defendants' Statement of Undisputed Facts and Statement of Genuine Issues of Material Fact ("Plaintiff's Response"), Fact No. 82.[2] Accordingly, whatever the merit of McFadden's contention that she was not provided accurate notice of her leave rights, McFadden suffered no harm and, hence, has no legal claim to pursue in this litigation.

Second, McFadden acknowledges that her doctors attested to the fact that due to her medical condition, she could not "perform any work" or engage in any "gainful employment," and McFadden, herself, acknowledges that at the time of her termination she did not know from one day to the next whether she could get out of bed. Plaintiff's Response, Fact Nos. 35, 67, 68; Defendants' Reply, Fact Nos. 35, 45-61, 65-76. Given these admissions, there can be no question that Ballard Spahr legally terminated McFadden's employment after all of her FMLA and non-

---

[2]     In responding to Defendants' Statement of Undisputed Facts, Plaintiff's response contains various legal arguments and unsupported contentions which upon examination, do not actually dispute Defendants' factual statements.  Thus, the fact that McFadden has offered a "response" to a factual statement does not mean that the fact is actually disputed.  Rather, as discussed in more detail in Defendants' Reply to Plaintiff's Response to Statement of Undisputed Facts ("Defendants' Reply"), virtually all of Defendants' statement of facts stand undisputed and any remaining disputes of fact are not material to the issues raised by Defendants' motion for summary judgment.

FMLA leave expired. McFadden asserts that she requested to return to work in the receptionist position at the Washington, D.C. office of Ballard Spahr. Even if she did, McFadden has come forward with no evidence beyond her own subjective belief that she could have performed the receptionist job, and, in any event, that position was not vacant. Ballard Spahr, therefore, did not engage in any disability discrimination when it terminated McFadden's employment.

The evidence also fails to support McFadden's claim that she was not accorded the same leave and schedule modifications as Caucasian employees. McFadden cannot show that the Caucasian employees she identifies were similarly situated and, moreover, their leave and schedule modifications were not materially different from those provided to McFadden. Indeed, the record stands undisputed that McFadden received numerous accommodations that other Caucasian employees did not receive.

<u>Third</u>, and finally, McFadden cannot show that she was retaliated against for engaging in any protected activity. McFadden's opposition totally ignores the fact that at the time she was terminated, she had exhausted all of her FMLA and non-FMLA leave under Ballard Spahr's leave policies and had informed Ballard Spahr that "she was unable to return" to work. Plaintiff's Opposition at 9. It is not retaliatory for an employer to terminate an employee whose leave has expired and is unable to return to his or her job.

In short, none of the questions posed by McFadden are sufficient to raise a jury issue that would counsel against this Court granting Defendants' motion for summary judgment.

## II.  McFADDEN'S DISCRIMINATION CLAIMS ON THE BASIS OF DISABILITY AND RACE MUST FAIL

In order for her to state a *prima facie* case of disability or race discrimination, McFadden must show that she was qualified to perform her job. *Richard v. Bell Atlantic Corp.*, 164

F.Supp.2d 10, 16 (D. D.C. 2001), *Kalekiristos v. CTS Hotel Management Corp.*, 958 F.Supp.

641, 655 (D. D.C. 1997).  In opposing summary judgment, McFadden has failed to do so.

McFadden has presented no admissible evidence to create a genuine dispute that at the time she

was terminated from her employment with Ballard Spahr, she was not able to work and, hence,

not qualified to perform her job.[3]

### A.    McFadden Does Not Dispute the Objective Evidence that She Was Incapacitated and Unable to Work

McFadden does not dispute that at the time she was terminated by Ballard Spahr after

having received approximately seven  months of medical leave, she could not have returned to

her job as a legal secretary, nor in Ballard Spahr's word processing department.  On May 14,

2004, when she spoke with Ballard Spahr representatives about whether she could return to work

following the expiration of her medical leave, McFadden acknowledges that "[s]he replied that

she was unable to return."  Plaintiff's Opposition at 9.  McFadden also acknowledges that

Ballard Spahr offered her "a job in the firm's word processing department," but she turned it

down because she could not physically perform the work.  *Id.*

Further, McFadden does not dispute that her physicians attested to the fact that she was

"unable to perform any work" and that there was no expectation she could resume "gainful

employment."  Plaintiff's Response, Fact Nos. 66-73; Defendants' Reply, Fact Nos. 45-61, 65-

---

[3]      In her opposition, McFadden erroneously states that Defendants have not moved for summary judgment as to her disability discrimination claim for unlawful termination. McFadden Opposition at 31, n. 158.  McFadden is incorrect.  Defendants' motion for summary judgment seeks dismissal of all of her claims, including her claim for disability discrimination arising from her termination.  The basis for Defendants' motion is set forth in its previously filed Memorandum in Support of Defendants' Motion for Summary Judgment at 8-14.  As set forth in more detail in that memorandum, McFadden cannot establish that she was a qualified disabled individual and, hence, has no claims for disability discrimination, including any claim based upon her termination.

76. Although McFadden asserts that she told Drs. Mussenden and Clark that she "could perform the duties of Firm Receptionist" (Plaintiff's Opposition at 7), none of the medical statements signed by McFadden's physicians indicated they agreed with McFadden or that she could perform any type of job. Dr. Mussenden certified that McFadden was "unable to perform any work" and that she could not be released to full or part-time work "indefinitely." Plaintiff's Response, Fact Nos. 67, 68; Defendants' Reply, Fact Nos. 45-61, 65-76. Dr. Clark certified that "it is not to be expected that [McFadden] will ever be able to resume gainful employment." Plaintiff's Response, Fact No. 70, Defendants' Reply, Fact Nos. 45-61, 65-76.[4] There is no equivocation about McFadden not being able to work in any of the statements of her physicians.

Moreover, McFadden admits that (1) she was experiencing headache clusters, which could last for 2-3 days and cause loss of vision, (2) she had an inability to maintain her personal

---

[4]    McFadden attempts to avoid the impact of her statements and those of her physicians to UnumProvident and the Social Security Administration ("SSA") pertaining to her medical condition and inability to work by contending that the standard for the award of Social Security disability insurance does not take into account the possibility of reasonable accommodation. See Plaintiff's Opposition at 24. McFadden's argument, however, misses the mark. Defendants do not contend that McFadden is foreclosed from arguing that she could have worked because the Social Security Administration awarded her SSDI. Rather, Defendants make the different argument that the <u>factual</u> statements made by McFadden and her physicians as to her medical condition and physical limitations confirm that she could not have continued working at Ballard Spahr.

The case law cited by McFadden highlights this difference. See Plaintiff's Opposition at 25. For example, in *Kiely v. Hartland Rehabilitation Services, Inc.*, 359 F.3d 386 (6th Cir. 2004), the Sixth Circuit held that the plaintiff, who was legally blind, should not be estopped from pursuing his disability discrimination suit because he had stated on his SSDI application that he was "disabled." In so ruling, the court noted that the plaintiff's blindness was a "listed" condition under the Social Security Act which entitled him to SSDI "regardless of his actual ability to do his job." *Id.* Unlike the situation here, the plaintiff in Kiely did not make factual statements in his application describing the limitations on his ability to perform various life activities. Moreover, McFadden has no "listed" condition under the Social Security Act that would automatically entitle her to SSDI.

hygiene without help, (3) she needed to use oxygen tanks to breathe, (4) she could not stand without assistance and could stand with assistance for no more than a few minutes, (5) she could not lift anything, (6) she needed assistance to get out of bed, and (7) she experienced incontinence.  Plaintiff's Response, Fact No. 17; Defendants' Reply, Fact Nos. 16-17.

McFadden also acknowledges that she "became substantially impaired in her ability to stand, walk, breathe, lift and manipulate objects" and  she cannot "walk without the assistance of a cane and, then, is able to only walk very short distances."  Plaintiff's Opposition at 6.  She also cannot "cook, drive, perform chores, write, type, or sit for extended periods, due to constant pain."  *Id.* at 6-7.  Finally, McFadden does not dispute that at the time she was terminated, she was unable to attend work consistently, and she had no way of predicting until she woke up in the morning whether she would be able to get to work.  Plaintiff's Response, Fact No. 35; Defendants' Reply, Fact No. 35.

### B.    McFadden's Assertion that She Could Have Worked as a Receptionist Has No Factual Support

In the face of these objective facts, which McFadden had admitted, McFadden still asserts that notwithstanding her "disability, she could have performed the essential functions of the receptionist position" (Plaintiff's Response, ¶¶16, 17) and that Ballard Spahr should have terminated its receptionist, Betty Ann Hahn, who at the time was on medical leave, and given McFadden the job.  Plaintiff's Opposition at 28. This is McFadden's <u>sole</u> basis for contending that she was a qualified employee at the time Ballard Spahr terminated her employment.

McFadden's subjective belief that she could have performed a receptionist position does not create a triable issue of fact, however.  The law is clear that in order to defeat a summary judgment motion, the non-moving party must produce admissible evidence that creates a genuine

issue of material fact. A party may not rely upon his or her own subjective views. *Minahan v. American Pharmaceutical Association*, 259 U.S.App.D.C. 10, 812 F.2d 726, 728 (D.C. App. 1987)

McFadden asserts that "with the aide of a headset and a few breaks during the day" she could have performed the receptionist job because the job required only that she answer a "16-line telephone system and make scheduling arrangements for the use of the conference room." Plaintiff's Opposition at 27. Yet, McFadden fails to explain how, given her admitted physical infirmities, she could have performed these duties in light of the fact that she is in "constant pain," is unable to "write, type, or sit for extended periods" and "is substantially limited in maneuvering her fingers." *Id.*, at 5, 27. Most notably, McFadden totally ignores her admitted inability to be able to come to work on a regular, consistent basis. McFadden acknowledges that at the time she was terminated, she did not know from one morning to the next whether she would be able to get to work. See Plaintiff's Response, Fact No. 35; Defendants' Reply, Fact No. 35.

Defendant Riley-Jamison, the Washington office's Human Resource Manager, testified at her deposition that the firm's receptionist was required to work regular hours every day, and the written job description for the receptionist position specifically states that a receptionist must be able to attend work regularly and consistently and that the position requires punctuality and reliability. See Riley Jamison Depo. at 177 and Ex. 10; Plaintiff's Response, Fact No. 34, Defendants' Reply, Fact No. 34. Although McFadden asserts that "[w]hether one of the Receptionist's essential function is attendance constitutes a genuine issue of fact" (Plaintiff's Response, Fact No. 34), McFadden has not presented any admissible evidence to create a genuine factual dispute with respect to the issue.

To properly oppose summary judgment, the non-moving party must do more than dispute a statement of fact; the non-moving party must come forward with admissible evidence to support any such dispute. *Spiegel v. Leavitt*, 2005 U.S. Dist. LEXIS 22470, *12 (D. D.C. Sept. 22, 2005). McFadden has utterly failed to do so. Moreover, in circumstances such as this, the courts have given deference to a written job description in determining what constitutes the essential functions of the job. *See, e.g. EEOC v. Omega*, 110 F.3d 135, 147 (1st Cir. 1997); *Roots v. Henderson*, 58 F.Supp.2d 959, 993 (S.D. Ind. 1999).

In short, there can be no genuine dispute that the receptionist position at Ballard Spahr required that a receptionist be able to work regular hours every day and be punctual in attendance. There also can be no genuine dispute that McFadden could not satisfy this essential job requirement and, hence, was not qualified. See *Rosell v. Kelliher*, 468 F. Supp.2d 39, 45-46 (D.D.C. 2006) (an employee who cannot meet the attendance requirements of the job is not a "qualified individual"), citing *Sampson v. Citibank*, 53 F.Supp.2d 13, 18 (D.D.C. 1999).[5]

## C.   Ballard Spahr Was Not Required to Terminate Betty Ann Hahn as a Reasonable Accommodation

Even if this Court were to find that there is a genuine factual dispute as to whether McFadden could have performed a receptionist position, McFadden had no legal right to require Ballard Spahr to reassign her to that position because doing so would have required Ballard Spahr to terminate an existing employee. In her opposition papers, McFadden does not dispute

---

[5]   McFadden also does not dispute that following the termination of her employment with Ballard Spahr, she did not seek employment as a receptionist with any other employer even though from the time McFadden was terminated through the present, there have been thousands of available receptionist positions in the Washington, D.C. area. See Plaintiff's Response, Fact No. 63. Instead of looking for a receptionist position, McFadden moved to Florida for her health. *Id.*, 64.

that at the time of her termination, the receptionist position was being held open for Betty Ann

Hahn, who was on a medical leave of absence. Plaintiff's Opposition at 28; Plaintiff's Response,

Fact No. 37; Defendants' Reply, Fact No. 37. Like McFadden, Betty Ann Hahn received

FMLA leave and, after that leave expired, Ms. Hahn, like McFadden, was provided with an

additional three months of unpaid leave pursuant to Ballard Spahr's policies. When it became

clear to Ballard Spahr that Betty Ann Hahn would not be able to return to work, her position as a

receptionist was filled with a permanent employee in August, 2004, several months after

McFadden was terminated.[6] Plaintiff's Response, Fact No. 37; Defendants' Reply, Fact No. 37.

McFadden claims that Ballard Spahr committed disability discrimination by failing to

transfer her to the receptionist position. To have done this, however, Ballard Spahr would have

had to terminate Ms. Hahn before the end of her non-FMLA leave. In essence, McFadden is

arguing that she should have been treated better than Ms. Hahn. Although McFadden received

all of her non-FMLA leave before she was eventually terminated, McFadden contends that

Ballard Spahr should have cut short Ms. Hahn's non-FMLA leave and terminated her so that

McFadden could have filled her position.

The law, however, does not require such an action. An employer is not required to make

accommodations for a disability that would violate the rights of other employees. *Mason v.

Frank*, 32 F.3d 315, 319 (8th Cir. 1994); *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir.

---

[6]     In her response to Defendants' Statement of Undisputed Facts, McFadden asserts that "the firm did not terminate Hahn, but rather retained her, despite the expiration of her FMLA and non-FMLA, unlike McFadden and Brisco." Plaintiff's Response, Fact No. 37; Defendants' Reply, Fact No. 37. In support, McFadden cites the Declaration of Brisco, various documents, and Defendants' Supplemental Answers to Interrogatory No. 20 and clarifying letter. None of the sources to which McFadden refers calls into question the fact that at the time that McFadden was terminated, Ms. Hahn still was employed by Ballard Spahr and that her position was not filled on a permanent basis until August, 2004.

1995).  Thus, it never is reasonable to terminate or reassign other employees to make room for a disabled employee.  *Williams v. Avnet, Inc.*, 910 F.Supp. 1124 (E.D.N.C. 1995); *Miecznikowski v. UPS*, 1998 U.S. Dist. LEXIS 21581 (M.D. Fl. 1998).  As stated by the court in *Clayborne v. Potter*, 448 F. Supp. 2d 185, 192 n. 6, D.D.C. 2006),  "[t]he employer is not required to . . . "bump" another employee to create a vacancy."  Thus, reassignment as a reasonable accommodation is limited to vacant positions, and there is no factual dispute that the receptionist position did not become vacant until August, 2004, over three months after McFadden had been terminated.[7]

McFadden's reliance upon the D.C. Circuit's decision in *Aka v. Washington Hospital Center*, 332 U.S. App. D.C. 25, 156 F. 3d 1284 (D.C. Cir. 1998), is not to the contrary.  See Plaintiff's Opposition at 13-14.  In *Aka*, the court of appeals recognized that reassignment as a reasonable accommodation is limited to open positions.  Indeed, the decision specifically refers to the legislative history of the ADA that bumping another employee out of a position to create a vacancy is not required."  156 F.3d at 1304, quoting H.R. Rep. No. 485 (II), 101st Cong., 2d Sess. at 63 (1990).  This is precisely what McFadden claims Ballard Spahr should have done – bump another employee (Hahn) out of the receptionist position to create a vacancy – and precisely what the *Aka* court said was not required to comply with any legal mandate.  See *Duncan v. Harvey*, 479 F. Supp. 2d 125, 133 (D.D.C. 2007) (citing *Aka* for proposition that employers are not required to "bump" an employee as a reasonable accommodation).

---

[7]    The fact that Betty Ann Hahn was on medical leave at the time (and her receptionist job being performed by a temporary worker) does not change the analysis.  The result would be the same: an existing employee, i.e., Hahn, would have been terminated and replaced by a disabled employee, i.e., McFadden, requesting transfer as an accommodation.  McFadden has not cited to one case that would mandate such an inequitable result and require that an employer terminate an existing employee to accommodate a disabled worker.

In sum, because McFadden cannot show that she was qualified to perform her job as a legal secretary (in fact, she admits that she could not) and has failed to demonstrate that she could have performed any vacant job at Ballard Spahr (in fact, she admits that she could not have worked as a word processor, either), Ballard Spahr was well within its rights to terminate her employment.[8]

**D.    McFadden Cannot Show Race Discrimination**

Even if McFadden could show that at the time she was terminated she was qualified to perform her job, which, as set forth above, she cannot, McFadden has no evidence that she was subjected to race discrimination by Ballard Spahr.  McFadden acknowledges that "Ballard Spahr consistently awarded her salary increases."  Plaintiff's Opposition at 3.  McFadden also admits

---

[8]    This is the case, whether or not the reason for Ballard Spahr's termination is characterized as being due to McFadden's inability to return to work or due to her disability. The ADA and the DCHRA protects only disabled individuals who are qualified in the sense of being able to perform the job with or without reasonable accommodation.  See, e.g., *Carroll v. England*, 321 F.Supp. 2d 58, 69 n. (D.D.C. 2007).  If the disabled person is not qualified, then an employer can terminate the person even if it is due to the disability.  See, e.g., *Wann v. American Airlines*, 878 F. Supp. 82, 84 (S.D. Tex. 1994), aff'd, 58 F. 3d 636 (5th Cir. 1995) ("only those persons who are qualified – that is, able with or without reasonable accommodation, to perform the essential functions of a particular job – may state a claim under the ADA"); *McDaniel v. Allied Signal, Inc*., 896 F. Supp. 1482 (W.D. Mo. 1995) (where plaintiff was not a "qualified individual" with a disability, plaintiff was not covered by the ADA).  The disability laws do not immunize from termination disabled individuals who cannot do their jobs.

Thus, the fact that in moving for summary judgment, Defendants have not specifically challenged McFadden's contention that she was terminated due to her disability, does not mean as McFadden argues in her Opposition, that the Defendants "concede" that Ballard Spahr violated the ADA and the DCHRA.  Plaintiff's Opposition at 31.  As set forth above, Defendants most certainly do not concede that McFadden was terminated in violation of any law, including the ADA and the DCHRA.

that no racist comments were made to her, and none of what McFadden characterizes as harassing comments related to her race.  See Plaintiff's Response, Fact No. 41.[9]

Instead, McFadden's claim of race discrimination is predicated solely upon her contention that four Caucasian secretaries and the receptionist, Betty Ann Hahn, were treated better than she.  The secretaries are Kathy Hannah, Rhea Maher, Judy Mintz and Elaine Wilbur.  As Defendants explained in their initial memorandum in support of summary judgment, these individuals all had different supervisors than McFadden, who was supervised by partner, Charles Henck, and each had differentiating reasons and circumstances for taking leave. See Memorandum in Support of Defendants' Motion for Summary Judgment at 23-27.   As a result, they cannot be deemed to be similarly situation to McFadden.[10]  A plaintiff must show that favorably treated co-workers dealt with the same supervisor, and have been subject to the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them.  See also *Williams v. Chertoff*, 2007 U.S. Dist. LEXIS 46311 (D.D.C. June 27, 2007).

---

[9]    McFadden's so-called "harassment" consists of a collection of stray comments, many of which were allegedly made six months to a year before McFadden's termination. Stray comments unrelated to the decisional process are insufficient to show that an employer relied on a protected characteristic. *See, e.g. McManus v. MCI Communcations Corp.*, 748 A.2d 949, 956 (D.C. App. 2000). A statement must speak a discriminatory intent with little or no equivocation. *Lucas v. Paige*, 435 F.Supp.2d 165 (D. DC. 2006).   None of the remarks alleged by McFadden satisfy this standard.

[10]    The case law cited by McFadden is not to the contrary; indeed, it is not apposite.  See *Neuren v. Adduci, Matriani, Meeks & Schill*, 310 U.S. App. D.C. 82, 43 F. 3d 1507 (D.C. Cir. 1995), and *Judge v. Marsh*, 649 F. Supp. 770 (D.D.C. 1986).  In *Neuren*, the court found that there was no evidence that the proposed comparator was similarly situated even though both the plaintiff and the proposed comparator had the same job title because there was a difference in seniority and a different type of performance issue.  In *Judge*, the court considered a statistical analysis of the work force, not whether employees were comparators.

Even if the employees identified by McFadden were considered to satisfy the standards for being comparators, McFadden has not shown that she was treated any worse than these individuals. All of McFadden's so-called "comparators" were permitted to work a part time or reduced hour schedule, but so was McFadden. McFadden admits that Ballard Spahr "approved an alternating 3-days and 4-days a week schedule" to allow her to take her husband to chemotherapy treatments and to care for him afterwards. Plaintiff's Opposition at 4-5. McFadden also received over seven months of leave due to her own medical condition. While McFadden's "comparators" may have received different types of part time or alternative work schedules than McFadden, this was due to their individual circumstances. There is absolutely no evidence that any differentiation in the manner in which McFadden's "comparators" took leave establishes that Ballard Spahr treated McFadden less favorably due to her race.[11] Moreover, McFadden cannot show that any of her alleged comparators were ever accorded the "accommodation" she purportedly sought and was denied, i.e, reassignment to a different position currently held by an incumbent employee (in McFadden's case, the receptionist position).

Finally, McFadden does not dispute that she was provided accommodations that were not accorded to her so-called "comparators." Thus, in her response to Defendants' Statement of Undisputed Facts, McFadden admits that Ballard Spahr paid her as a full time employee even though she worked part time (Plaintiff's Response, Fact No. 78), that Ballard Spahr advanced her salary without requesting or receiving repayment (*id.*, 79), that when McFadden's husband

---

[11]     A chart comparing McFadden to those individuals whom she claims are comparators accompanies this reply memorandum as Exhibit B. The chart not only shows that the employees were not similarly situated to McFadden, but also that they did not receive any better treatment than McFadden.

became ill, Ballard Spahr provided benefits and legal assistance to Mr. McFadden without legal

obligation to do so (*id.*, 77), that Ballard Spahr allowed McFadden to work partial days that were

recorded as full days (*id.*, 83), and that Ballard Spahr convinced its disability insurance carrier to

begin disability insurance payments to McFadden, even though the company initially had denied

her insurance claim (*id.*, 86).

Given all of these accommodations and benefits that Ballard Spahr provided to

McFadden, it simply is inconceivable how she can continue to assert in her opposition to

summary judgment that Ballard Spahr discriminated against her on the basis of her race. These

are not the actions of an employer that has any type of racial animus whatsoever.[12]

## III.    BALLARD SPAHR PROVIDED McFADDEN WITH MORE THAN HER FULL ENTITLEMENT TO FMLA LEAVE AND DEFENDANTS DID NOT INTERFERE WITH ANY OF HER FMLA RIGHTS

In her opposition, McFadden admits that Ballard Spahr fully complied with its Family

and Medical Leave Act ("FMLA") obligations with respect to the leave she took for her own

serious health condition in 2003 and 2004. Plaintiff's Opposition at 19, fn. 108. However,

McFadden contends that Ballard Spahr violated the FMLA pertaining to the leave she took to

care for the serious health condition of her husband in 2002 and 2003. In this regard, McFadden

contends (1) that she was provided "false information" regarding her FMLA leave rights and (2)

that she purportedly "restricted her absences to those necessary to take her husband for

---

[12]    Although McFadden asserts that she complained to the partner for whom she worked, Charles Henck, about Riley-Jamison's alleged "harassment," (Plaintiff's Response, Fact No. 40), she does not dispute that she never complained to Mr. Henck about any racial harassment or discrimination. Thus, any claims that McFadden has pertaining to racial harassment also must fail because she failed to utilize Ballard Spahr's policies and procedures to report any of the purported racially harassing or discriminatory conduct of which she now complains in her lawsuit. See Memorandum in Support of Defendants' Motion for Summary Judgment at 22-23, and cases cited therein.

chemotherapy." Plaintiff's Opposition at 21. As set forth below, McFadden fails to set forth a viable FMLA claim on either ground.

### A. McFadden Can Show No Harm Resulting from any "False Information" She Was Provided

According to McFadden, defendant Riley-Jamison and Ballard Spahr benefits administrator, Fern Forman, provided "misinformation" by telling her that she could take 12 weeks of unpaid leave, rather than 16 weeks as provided by the District of Columbia Family Medical Leave Act ("DCFMLA"); by stating that she needed to take her FMLA leave during the coverage period of October 17, 2002 through January 8, 2003, rather than a longer period of time; and by inaccurately counting two days toward her FMLA leave entitlement. Plaintiff's Opposition at 18.

Whatever the truth of McFadden's assertions, the critical fact is that McFadden has failed to show that any of the purported "false information" she received caused her any legally cognizable harm that would give rise to a cause of action under the FMLA. Indeed, with respect to McFadden's contention that Riley-Jamison and Forman incorrectly told her that she had only 12 weeks of unpaid leave, McFadden admits that she received the correct information from the U.S. Department of Labor and that she communicated this information to Forman and Riley-Jamison. Plaintiff's Opposition at 18. Moreover, McFadden acknowledges that she received more than 16 weeks of leave fully satisfying the DCFMLA requirements. Indeed, McFadden does not dispute that "Ballard Spahr provided [her] more leave than required under the federal FMLA and the D.C. FMLA." Plaintiff's Response No. 82. Hence, McFadden cannot show that she sustained any harm whatsoever as a result of any alleged "misinformation" that she purportedly was given about her rights.

As pointed out in Defendants' brief in chief, the Supreme Court found in *Ragsdale v. Wolverine Worldwide, Inc.,* 535 U.S. 81, 122 S. Ct. 1155, 152 L. E. 2d 167 *(*2002), that an employer's failure to provide an employee information pertaining to FMLA leave does not give rise to an FMLA claim <u>unless</u> the employee can show that he or she was harmed as a result of any misinformation. See Memorandum in Support of Defendants' Motion for Summary Judgment at 16, and case law cited therein. In this case, McFadden can show no such harm, and, accordingly, her FMLA claim must fail.

**B.     McFadden Cannot Show That She Was Denied Any FMLA Leave Entitlement**

McFadden asserts that Defendants Ballard Spahr and Riley-Jamison harassed and interfered with her FMLA leave, and as a result, they purportedly "restricted her absences to those necessary to take her husband for chemotherapy." Plaintiff's Opposition at 21.[13] In order to state a claim of interference under the FMLA, an employee must establish not only that the employee is entitled to take leave under the statute, but also (1) that she gave notice to the defendant of her intention to take leave and (2) that she was denied benefits to which she was entitled. See *Haile-Iyanu v. Central Parking System of Virginia,* 2007 U.S. Dist. LEXIS 48153, *18 (D.D.C. July 5, 2007).

---

[13]     Significantly, at the very time McFadden claims that Riley-Jamison made various harassing comments, McFadden does not dispute that Riley-Jamison was on maternity leave. Plaintiff's Response, Fact No. 44 (Riley-Jamison was on maternity leave from June 25 through October 13, 2003 and did not return to work until McFadden began her maternity leave). Accordingly, Riley-Jamison could not have made the statements McFadden attributes to her. See also Exhibit A. Moreover, McFadden admitted at her deposition that the statements she attributed to Riley-Jamison were not her exact words, but rather were McFadden's interpretation of Riley-Jamison's attitude. See Defendants' Reply, Fact No. 42.

In this case, McFadden's contention that the Defendants interfered with her rights under the FMLA runs afoul of these two elements of an interference claim. McFadden's opposition acknowledges that she never gave notice of her intention to take any of the leave that she now claims she would have taken. Defendants may not be liable for interfering with FMLA leave that McFadden did not even request.

McFadden also admits that she received all the FMLA leave that she requested and, indeed, that she was provided "more leave than required under the federal FMLA and D.C. FMLA." Plaintiff's Response, Fact No. 82.[14] Moreover, to the extent that McFadden claims that she would have taken additional leave to care for her husband, McFadden would have had less FMLA leave available to take for her own serious health condition after she became ill in the first half of 2003. As McFadden acknowledges, in 2003, she began taking FMLA leave for her own serious health condition. Had McFadden taken additional FMLA leave earlier to care for her husband, as McFadden now claims she would have done, McFadden would not have had as much leave available for her to take for her own serious health condition.[15] Simply put,

---

[14] In her response to Defendants' Statement of Undisputed Facts, McFadden submitted a declaration stating that her request for leave in 2002 was denied. Plaintiff's Ex. 22, ¶ 2. At her deposition, however, McFadden stated that there was not a day or time in which she asked for leave from Ballard Spahr and was denied the leave. Defendants' SOF, ¶ 21, Ex. 5, McFadden's Depo. 5/17/07 at 98. McFadden cannot belatedly submit a declaration contradicting her own sworn deposition testimony. *Childs-Pierce v. Utility Workers Union*, 383 F.Supp.2d 60, 63 fn. 2 (D. D.C. 2005). McFadden's declaration statements should be disregarded by the Court.

[15] Ballard Spahr's FMLA policy provides that the amount of leave available to an employee is calculated on a "rolling backward" basis. See Ex. 19 to Plaintiff's Opposition; Defendants' Reply, Fact No. 21. Under that method, the amount of leave that the employee has used in the 12 months prior to the request for leave is first calculated. The difference between the amount of leave that has been used in the last 12 months and the 12 week (or 16 week in D.C.) entitlement is the amount of leave the employee has available to take in the future. Hence, to the extent that McFadden would have used more leave in the 12 months prior to taking disability leave starting

McFadden should not be able to have it both ways: claiming that Defendants interfered with her taking additional leave to care for her husband, but also claiming that she was entitled to a full 16 weeks of leave beginning in 2003 for her own serious health condition.

Finally, McFadden has failed to show any monetary loss due to her purported decision not to request additional FMLA leave to care for her husband. McFadden can point to no wages, salary or other benefits that she lost due to the purported restriction on her absences "to those necessary to take her husband for chemotherapy." Plaintiff's Opposition at 21. Absent such damages, McFadden has no cognizable FMLA claim. The statute allows damages measured only by actual monetary loss and does not allow for any emotional distress or other types of intangible damages. 29 U.S.C. § 2617(a)(1); see also *Rogers v. City of Des Moines,* 435 F.3d 904, 909 (8th Cir. 2006). In addressing a similar situation, this Court has held that where an employee has suffered no monetary loss as a result of purported FMLA violations, there is no legal basis upon which a plaintiff may pursue an FMLA claim. See *Coleman v. Potomac Electric Power Co.*, 281 F. Supp. 2d 250, 255-6 (D.D.C. 2003). A like result should apply in this case.

### C.    McFadden's FMLA Claim Is Time-Barred

Even if McFadden could state a viable FMLA claim for interference with her leave rights, her opposition to summary judgment confirms that any such claim is time-barred. The statute of limitations for a violation of the DCFMLA is one year. D.C. Code § 32-510(b). The

---

in mid-October 18, 2003, she would have had less leave available to take for her own medical condition.

statute of limitations for violation of the federal FMLA is two years for a non-willful, and three years for a willful violation of the statute (29 U.S.C. § 2617(c)).

The limitations period begins to run when an employee has notice of the action that potentially violates the FMLA.[16]  In this case, McFadden asserts that she requested FMLA leave relating to her husband's medical condition in November, 2002, and at that time, she asserts that she had discussions with Riley-Jamison and Ballard Spahr employees about her schedule. McFadden also states that she contacted the Department of Labor in the same time period and learned that Ballard Spahr was giving her "false information."   Plaintiff's Opposition at 4.

Thus, according to McFadden's own account, she was aware of her FMLA claim in November, 2002.  Yet, McFadden failed to file her complaint until December 14, 2005, more than three years later.  Any FMLA claim she may have is time-barred under both the DCFMLA and the federal statute.

## IV.     BALLARD SPAHR IS ENTITLED TO SUMMARY JUDGMENT ON McFADDEN'S RETALIATION CLAIM

Purportedly as a result of taking FMLA leave in 2002 and 2003, requesting to be reassigned to the receptionist position, and informing Riley-Jamison of advice from the Department of Labor in 2002, McFadden asserts that the Defendants retaliated against her by

---

[16]      *See, e.g. Packard v. Continental Airlines, Inc.*, 24 Fed. Appx. 960, 962 (10th Cir. 2001) (statute of limitations began to run when the plaintiff was aware of discrimination or violations of the FMLA); *Nelson v. University of Texas*, 491 F. Supp. 2d 672, 681-683 (N.D. Tex. 2007); *Hanger v. Lake County*, 2002 U.S. Dist. LEXIS 25403 (D. Minn. Dec. 31, 2002) (a cause of action under the FMLA accrues when the employer first violates the statute); *Biermann v. ALCOA,* 2000 U.S. Dist. LEXIS 21964 (S.D. Iowa Jan. 21, 2000) (an alleged FMLA violation accrues when it occurs).

denying her reassignment as a receptionist and terminating her employment in May, 2004. Plaintiff's Opposition at 25-26.

McFadden argues that a causal nexus exists between her protected activities and the adverse actions because they "occurred close in time to her protected conduct." Plaintiff's Opposition at 25. This argument patently is without merit with respect to McFadden's request for FMLA leave in 2002 and 2003 and her contacts with the Labor Department. The only alleged conduct that evidences a temporal proximity to her termination is McFadden's purported request to be reassigned to the receptionist position. However, as explained above, at the time she was terminated, McFadden had no FMLA or non-FMLA leave remaining and McFadden informed Ballard Spahr that she "was unable to return" to work. Plaintiff's Opposition at 9.

It certainly is not illegal retaliation for an employer to terminate an employee whose available leave has expired and cannot return to work. *See, e.g. Praseuth v. Newell-Rubbermaid, Inc*., 219 F.Supp.2d 1157, 1193 (D. Kan. 2002) (granting employer summary judgment on retaliation claim where employee requested leave, received leave, and was terminated after exhaustion of leave). Also as discussed above, because McFadden had no legal right under the ADA to require Ballard Spahr to terminate the firm's receptionist, Betty Ann Hahn, and replace her with McFadden, it cannot be retaliatory for Ballard Spahr to refrain from

doing so.[17]  Defendants, therefore, are entitled to summary judgment on McFadden's retaliation claims under the FMLA, the ADA, Title VII, the DCHRA, and § 1981.

## V.    PLAINTIFF CANNOT SHOW INDIVIDUAL LIABILITY FOR MS. RILEY-JAMISON

Finally, McFadden's opposition makes clear that she has no factual or legal basis to pursue claims for individual liability against Riley-Jamison under § 1981, the DCHRA, or the FMLA.  McFadden's opposition acknowledges that the decision makers at Ballard Spahr with respect to FMLA leave were Ballard Spahr's director of human resources, John DiBattista, and the firm's benefits manager, Fern Forman.  Plaintiff's Opposition at 30.  Accordingly, McFadden has no basis to seek to subject Riley-Jamison to individual liability under the FMLA.

McFadden further acknowledges that Riley-Jamison did not have supervisory control over McFadden, but argues that "supervisory control" is "not the exclusive means" of establishing liability.  Plaintiff's Opposition at 23.  Relying upon the D.C. Court Appeals' recent decision in *Purcell v. Thomas*, 928 A. 2d 699 (D.C. 2007), McFadden contends that it is sufficient merely for the person to have "acted in the interest of the organization and exercised management and administrative authority."  *Id*., citing *Purcell*, 928 A.2d at 715.  McFadden's argument relying upon *Purcell* goes too far.  Unlike Riley-Jamison who is the human resources manager only for Ballard Spahr's Washington office, the individual defendant in Purcell was the "President, Chief Operating Officer, controlling shareholder, and Director of [the corporate

---

[17]    Also, requesting reassignment to the receptionist position does not fall within the definition of "protected activity."  As set forth by McFadden, protected activity involves "two types of conduct: (1) opposition to an activity made unlawful under the Acts; and (2) participation, whether directly or indirectly, in a process to redress perceived violation of the Acts."  Plaintiff's Opposition at 15.  Neither type of conduct is remotely similar to a request to be reassigned to a different job.

defendant], as well as the supervisor of" the plaintiff.  The court of appeals reasoned that because the individual defendant "was a high level official of [the defendant corporation defendant] who exercised <u>extensive</u> supervisory, management and administrative authority <u>over the corporation</u>, he was individually liable to" the plaintiff for discriminatory conduct under the DCHRA.  *Purcell*, 928 A. 2d at 715 (emphasis added).

In Riley-Jamison's case, there is no evidence whatsoever that she exercised any "supervisory, management and administrative authority" over Ballard Spahr, much less the "extensive" authority exercised by the individual defendant in *Purcell.*  Riley-Jamison's position as the Washington office's human resources director bears no meaningful resemblance whatsoever to that of a president, chief operating officer, controlling shareholder or director. Indeed, rather than supporting McFadden's contention that Riley-Jamison should be subject to individual liability, the *Purcell* decision confirms that McFadden's claims against her should be dismissed.

## V.    CONCLUSION

Notwithstanding McFadden's attempt to portray this case as presenting a "panoply of factual disputes" (Plaintiff's Opposition at 35), in reality, there can be no genuine factual dispute that McFadden was not subjected to discrimination or retaliation by the Defendants, nor were her rights to FMLA leave violated.

McFadden admits that she received more medical leave than that required by either the federal FMLA or the DCFMLA.  Plaintiff's Response, ¶ 82.  She acknowledges that Ballard Spahr accorded her schedule changes to care for her husband's serious health condition. Plaintiff's Opposition at 4-5.  Later, when McFadden developed her own serious health

conditions, she was provided both FMLA and non-FMLA leave.   After seven months, when all of her leave had expired, Ballard Spahr eventually terminate her employment when she said "she was unable to return."  Plaintiff's Opposition at 9.

Although in her lawsuit, McFadden asserts that she asked to be transferred to the receptionist job, there can be no objective, factual dispute that McFadden could not perform the duties of that position.  McFadden's subjective belief that she could have performed the receptionist duties and her contention that Ballard Spahr committed disability and race discrimination by not transferring her to that position (and terminate the incumbent employee who was on medical leave at the time) has no support in objective fact, nor in the law.

Accordingly, for the foregoing reasons and the reasons set forth in Defendants' previously-filed memorandum in support of summary judgment, Defendants' respectfully submit that their motion should be granted and this case dismissed in its entirety.

Respectfully submitted,

Ballard Spahr LLP, etc.
By counsel

_____/s/_____
Bernard J. DiMuro, Esq. (D.C. Bar #393020)
Jonathan R. Mook, Esq. (D.C. Bar #929406)
DiMURO GINSBERG, P.C.
908 King Street, Suite 200
Alexandria, VA  22314
(703) 684-4333
(703) 548-3181 (facsimile)
*Counsel for Defendants*