UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Vanessa A. McFadden, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:05CV02401 |
|  | ) Judge Richard J. Leon |
| Ballard Spahr Andrews and Ingersoll, LLP, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO
STATEMENT OF UNDISPUTED FACTS AND RESPONSE
TO STATEMENT OF GENUINE ISSUES OF MATERIAL FACT**

Defendants, Ballard Spahr and Margaret Riley-Jamison, hereby reply to Plaintiff's Response to Defendants' Statement of Undisputed Facts ("Plaintiff's Response") and respond to Plaintiff's Statement of Genuine Issues of Material Fact.

**I.   DEFENDANTS' REPLY TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS**

**A.   Facts Admitted by McFadden**

McFadden has not responded to, nor disputed, Fact Nos. 1-4, 6-7, 9, 13, 22, 24-27, 29-31, 38, 41, 43-45, 62-64, and 77-88. Therefore, these facts are deemed admitted. See Local Rule 56.1.

**B.   Reply to McFadden's Individual Fact Responses**

With respect to those facts to which McFadden has responded individually, as opposed to a group, Defendants reply as follows:

*Undisputed Fact No. 5*: **Charles Henck evaluated McFadden's qualifications, suitability for employment, and performance. Riley-Jamison did not have the authority to**

**hire or terminate. (Ex. 4, Riley-Jamison Depo. at 15-17, 38-39).**[1]

McFadden disputes that Riley-Jamison did not have the authority to hire or terminate Ballard Spahr employees. McFadden states that Riley-Jamison "was intimately involved in the hiring of legal secretaries, including the screening of candidates" and from this statement makes the impermissible logical leap that "[c]onsequently, she had the authority and ability to deny employment to individuals." As evidence in support, McFadden cites to Riley-Jamison's deposition testimony wherein Riley-Jamison states: "[i]f [the secretaries] work for lawyers, the lawyers make the hiring decision." (Ex. 4, Riley-Jamison Depo., p. 38). In response to a question as to who makes a decision to terminate legal secretaries, Riley-Jamison further states: "if they're working for lawyers, the lawyers." (*Id*., p. 39).

Neither of these statements demonstrates that Riley-Jamison had the authority to hire or terminate legal secretaries. In fact, the statements demonstrate the opposite: Riley-Jamison had no authority to hire or fire. Instead, she simply recruited for positions, scheduled interviews with the attorneys, and communicated offers. She did not make the hiring decision. On occasion, Riley-Jamison also communicated termination decisions, and she was present when such decisions were communicated to employees, but, again, she did not decide to terminate employees. Riley-Jamison was not the decision maker, and McFadden has presented no evidence that she was.

*Undisputed Fact No. 8*:   **Ballard Spahr accommodated McFadden's request by scheduling McFadden to work three to four days per week, on alternating weeks. (Ex. 1,**

---

[1] For ease of reference, the facts from Defendants' Statement of Undisputed Facts filed on September 7, 2007 are quoted in bold. Numerical exhibit citations are also from the original Statement of Undisputed Facts. Alphabetic exhibit citations are to new exhibits.

**Complaint at 26, Ex. 4, Riley-Jamison Depo. at 76-77, Ex. 5, McFadden Depo. 5/16/2007 at 93)**.

McFadden does not dispute that she received the schedule modification set forth in Statement of Fact No. 8. Instead, McFadden responds by making a legal argument that Defendants denied her full FMLA leave. Because McFadden's response is a legal conclusion and not a dispute of fact, Statement of Fact No. 8 stands admitted.

*Undisputed Fact No. 10*: **On weeks where McFadden worked four days per week, she was given Mondays off and Ballard Spahr did not charge the time off to McFadden's FMLA entitlement. (Ex. 7, Riley-Jamison Dec. at 2-3, Ex. 5, McFadden Depo. 5/16/2007 at 94-96)**.

McFadden claims that Ballard Spahr's leave records show that in 2003 the firm counted five Mondays toward her FMLA leave, but the time period when this occurred was not when McFadden was working a modified schedule. It was after she began her disability leave in mid-October, 2003. No genuine factual dispute exists, and even if it does, it is not material to the issues raised in Defendants' summary judgment motion.

*Undisputed Fact No. 11:* **Unlike all other employees who worked less than full-time, McFadden's employment status was never converted from full-time to part-time. McFadden is the only employee in Ballard Spahr's D.C. office who has ever been allowed to work part-time without a decrease in salary. (Ex. 7, Riley-Jamison Dec. at 3)**.

McFadden responds that other legal secretaries maintained their full-time status while working a modified schedule. To support this response, McFadden cites a section from the legal argument in her memorandum in opposition. McFadden's opposition, however, does not refer to

3

any facts to support her argument. Her opposition merely lists five other employees McFadden claims were allowed to work part-time schedules. Of these employees, two were provided unpaid FMLA leave, one worked a full-time schedule with adjusted hours, and two worked a part-time schedule with a salary and benefits decrease. (Ex. 14, Defendants' Supplemental Answers and Objections to Interrogatories, No. 17). This information does not call into question the fact that McFadden was the only employee to work part-time hours, while maintaining full-time pay and benefits. Undisputed Fact No. 11 stands admitted.

*Undisputed Fact No. 12*: **McFadden received 34 days of paid time off for the year 2002. (Ex. 8, November 1, 2002 Memorandum).**

McFadden does not dispute the number of days she received paid time off, merely the legal significance of the leave. This is argument, not a dispute of fact. Undisputed Fact No. 12 stands admitted.

*Undisputed Fact No. 14*: **At some point in 2002 and continuing into 2003, McFadden began to experience her own medical problems and complained to her co-workers about various medical problems. (Complaint at 36, Ex. 37, Plaintiff's First Supplemental Answers to Interrogatory No. 10, p. 4).**

McFadden disputes whether she "complained" to co-workers or whether her co-workers observed her problems. McFadden does not dispute that her own medical problems began in 2002 and continued in 2003. These facts stand admitted.

*Undisputed Fact No. 15*: **McFadden reported to work while she was ill. She had difficulties walking and typing. On multiple days in 2003 when McFadden came to work while sick, she was allowed to leave early without her early departure being counted**

**against her. Ballard Spahr gave McFadden credit for a full day's work. (Ex. 7, Riley-Jamison Dec. at 6).**

McFadden does not dispute these facts. Instead, citing her own deposition, she makes additional assertions about working longer hours.

*Undisputed Fact No. 18*: **Because of her illnesses, McFadden missed 67 days of work in 2003 and exceeded her paid leave days. (Ex. 24, 2002 and 2003 Leave Records). In 2003, Ballard Spahr advanced McFadden another ten days of paid leave from 2004. The two occasions in which Ballard Spahr advanced ten days of paid leave to McFadden are the only times Ballard Spahr's D.C. office ever has advanced such a substantial amount of leave. (Ex. 7, Riley-Jamison Dec. at 5).**

McFadden does not dispute the number of days she missed work in 2002 or 2003, that she exceeded her paid leave days, that she was advanced paid leave, or that she was the only employee to ever receive such a substantial amount of advanced paid leave. Undisputed Fact No. 18 stands admitted.

*Undisputed Fact No. 19:* **On or about October 15, 2003, McFadden took disability leave from her job at Ballard Spahr. (Ex. 1, Complaint at 39).**

McFadden responds that she took disability leave on or about October 18, 2003, not October 15, 2003. This response is based upon her own interrogatory answers, which do not conform to the attendance records maintained by Ballard Spahr. (Ex. 24, 2002 and 2003 Attendance Records). Any discrepancy in the date for the commencement of McFadden's disability leave is not material to the issues in the case and, hence, does not create any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-9 (1986). McFadden's

response also contains a legal argument that her entitlement to FMLA leave began anew on October 17, 2003. Such legal argument is improper in responding to a statement of undisputed facts. Moreover, as discussed in Defendants' reply to undisputed fact No. 21, *infra*, the argument is not correct.

*Undisputed Fact No. 20:* **Riley-Jamison had no control over the approval or denial of leave and benefits. She was only responsible for ensuring the proper paperwork was completed and forwarding the information to the firm's benefits department. (Ex. 4, Riley-Jamison Depo. at 44, 47)**.

See Reply to No. 5, *supra.*

*Undisputed Fact No. 21:* **McFadden used most of her available FMLA leave during 2002 and 2003 for the illnesses of herself and her husband. In 2002, McFadden missed 59 days of work. In 2003, McFadden missed 67 days of work. (Ex. 24, 2002 and 2003 Attendance Table). Ballard Spahr decided to restart the clock on October 15, 2003, and give McFadden an additional sixteen weeks of medical leave under the D.C. FMLA from October 15, 2003. (Ex. 7, Riley-Jamison Dec. at 7). Ballard Spahr never denied McFadden any of the leave that she requested. (Ex. 5, McFadden Depo. 5/16/07 at 98-100)**.

McFadden's response does not dispute Fact No. 21, but merely the legal implications and the proper interpretation of the FMLA and Ballard Spahr's FMLA policy. The FMLA policy speaks for itself. It defines the "leave year" as "the rolling 12 month leave period measured backwards from the date each employee's leave commences" and allows 12 workweeks (16 for District of Columbia employees) within each rolling backward leave year. An employee has a total entitlement during the leave year regardless of how many FMLA-qualifying events take

6

place during the leave year. (Plaintiff's Ex. 13, Ballard Spahr FMLA Policy, §§ A and B, Ballard 01359).

McFadden requested leave for her husband's medical condition on October 20, 2002. (Ex. 1, Complaint at 18). She, then, requested leave for her medical condition on October 14, 2003. (Plaintiff's Ex. 12, p. 117). Significantly, McFadden does not allege a FMLA violation relating to leave to the leave she took for her medical condition. (Opposition, p. 19, fn. 108-109). Consequently, any alleged dispute McFadden may have about the leave she took for her medical condition in 2003 and 2004 does not create a genuine issue of material fact that would preclude summary judgment being entered against her.

*Undisputed Fact No. 23:* **As McFadden was too sick to return to work, Ballard Spahr offered her an additional three months of non-FMLA leave. (Ex. 10, Letter from DiBattista to McFadden).**

McFadden's response does not dispute that she was too sick to return to work and was offered additional non-FMLA leave. She disputes whether Ballard Spahr offered her a "reasonable accommodation" under the law. This is improper legal argument. Undisputed Fact No. 23 stands admitted.

*Undisputed Fact No. 28:* **During the call, McFadden was told that the firm had added a new policy to their insurance to allow her an accelerated death benefit for her husband. (Ex. 5, McFadden Depo. at 282).**

McFadden's response does not dispute what she was told during the May 14, 2004 telephone call. Accordingly, Undisputed Fact No. 28 stands admitted.

McFadden's response cites to her deposition testimony, but McFadden's testimony

7

simply makes the additional argument that Ballard Spahr had an accelerated death benefit prior to adding it for her benefit.  McFadden has no personal knowledge about the matter, however.  Hence, McFadden's self-serving testimony does not constitute admissible evidence that would create any genuine factual dispute, much less a material one.

*Undisputed Fact No. 31:* **McFadden claims that she then asked about the receptionist position and was told it was unavailable.  (Ex. 5, McFadden Depo. 5/16/2007 at 292-293).  McFadden was told that the position was being held for an employee on medical leave.  (Ex. 5, McFadden Depo. 5/16/2007 at 293)**.

Although McFadden's response asserts there is a factual dispute as to whether she requested reassignment to the receptionist position, Defendants, for purposes of their summary judgment motion, have accepted *arguendo* McFadden's assertion that she requested reassignment to the receptionist position.  Hence, there is no factual dispute, and Fact No. 31 stands admitted.

McFadden's response also raises some irrelevant points by citing her deposition testimony to support her assertion that the notes she took of the telephone call with representatives of Ballard Spahr on May 14, 2004 contain only a list of what Ballard Spahr offered and are not minutes of the call. The pages cited from McFadden's deposition contain no such testimony, however.  She simply has created her argument out of whole cloth.

Additionally, McFadden attempts to manufacture a dispute about the leave status in May, 2004 of Ballard Spahr's receptionist, Betty Ann Hahn, by citing a declaration of a former Ballard Spahr employee (Cassandra Briscoe) who began a extended medical leave of absence on October 30, 2003, and never returned to work at the firm.  (Plaintiff's Ex. 10, Briscoe Dec. ¶ 11).

Because Briscoe was not working at Ballard Spahr in May, 2004 (and, in fact, had been on leave for seven months), she has no personal knowledge of Ms. Hahn's leave status or of the receptionist position at that period of time. Briscoe's declaration, therefore, is not probative evidence and should be disregarded. *Greenberg v. Food & Drug Admin.*,256 U.S. App.D.C. 135, 803 F.2d 1213, 1221 (D.C. Cir. 1986), *Gleklen v. Democratic Congressional Campaign*, 339 U.S.App.D.C. 354, 199 F.3d 1365, 1369 (D.C. Cir. 2000), *Londrigan v. FBI*, 216 U.S.App.D.C. 345, 670 F.2d 1164, 1174 (D.C. Cir. 1981). In point of fact, in May, 2004, Ms. Hahn was on an extended medical leave and the receptionist position did not become vacant until August, 2004.

*Undisputed Fact No. 32:* **McFadden was terminated by John DiBattista, the director of human resources, on May 14, 2004, due to her inability to return to work in an available position. (Ex. 1, Complaint at 47, Ex. 4, Riley-Jamison Depo. at 102-103, Ex. 13 May 20, 2004 Letter from DiBattista to McFadden)**.

McFadden disputes that she was terminated by John DiBattista due to her inability to return to work, citing her own opposition generally. McFadden references no evidence whatsoever to support any claimed dispute. Significantly, she does not dispute that her termination letter was signed by Mr. DiBattista, Ballard Spahr's director of human resources, and that the letter states that McFadden was being terminated due to her inability to return to work. Undisputed Fact No. 32 stands admitted.

*Undisputed Fact No. 33:* **In an ARC position, McFadden could come to work intermittently. It was the only position for which McFadden had the requisite skills that did not require her to report to work every day. (Ex. 7, Riley-Jamison Dec. at 8)**.

9

McFadden states there is no evidence she was offered an "intermittent" work processing job. At her deposition, McFadden admits that she was offered the position. (Ex. 5, McFadden Depo., 5/16/07, p. 281). McFadden also does not dispute that the ARC position would not have required her to come to work every day. McFadden's dispute appears to center solely on the definition of the word "intermittent." In this context of Fact No. 33, Defendants' used the term intermittent to mean that the ARC position did not require daily work attendance. This use of the term is in accord with the dictionary definition of "suspend[ing] or caus[ing] to suspend some activity periodically or temporarily." Websters II, New Riverside Dictionary (1984). Nonetheless, to the extent that there still remains a dispute about the definition of "intermittent," such a dispute is not material to any of the issues in the case. McFadden has not raised any genuine issue of material fact. Fact 33 stands admitted.

*Undisputed Fact No. 34:* **A receptionist at Ballard Spahr was required to report to work at regular hours, every day. A receptionist position could not be filled by an employee working intermittently. (Ex. 4, Riley-Jamison Depo. at 177)**.

McFadden's response states merely that whether "one of the Receptionist's essential functions is attendance constitutes a genuine issue of material fact." Beyond her own self-serving conclusion, McFadden cites no evidence disputing Fact No. 34. That is because there is none. Indeed, in addition to Riley-Jamison's deposition testimony referenced in Fact No. 34, Ballard Spahr's written job description of a receptionist position, which was introduced by McFadden as an exhibit at Riley-Jamison's deposition, requires an applicant to be punctual, reliable, and flexible for overtime. (Ex. C, Receptionist Job Description, Ex. 10 to Deposition of Riley-Jamison).

10

A party opposing a motion for summary judgment must present evidence to demonstrate that facts are in dispute; the mere contention that a fact is disputed will not suffice. *Benn v. Unisys Corp.*, 176 F.R.D. 2 (D. D.C. 1997). As McFadden cites no evidence whatsoever to support her dispute, Fact No. 34 stands admitted.

*Undisputed Fact No. 35*: **At the time, McFadden was unable to attend work consistently and had no way of predicting whether her illnesses would allow her to attend work that day until she woke up in the morning. At one point, in March of 2004, McFadden was confined to bed for a week and a half, unable to move more than turning her head from side to side. (Ex. 5, McFadden Depo. 5/16/2007 at 136-139).**

McFadden refers to her Response to Undisputed Fact No. 23. She does not dispute that she was unable to attend work consistently, could not predict her illnesses from day to day, or was confined to bed for a week and a half. Fact No. 35 stands admitted.

*Undisputed Fact No. 36:* **McFadden's physicians told her that she was disabled and could not work starting in April of 2003. (Ex. 5, McFadden Depo. 5/16/2007 at 140-141)**.

See Reply to No. 23.

*Undisputed Fact No. 37:* **At the time of McFadden's termination, there was no receptionist position available. The sole receptionist, Betty Ann Hahn, was on medical leave and Ballard Spahr was holding Ms. Hahn's position open. Ballard Spahr could not give McFadden the receptionist position. (Ex. 14, Defendant's Supplemental Interrogatory Answers, No. 16, 20). Ms. Hahn was eventually terminated and replaced in August. (Id.).**

McFadden does not dispute the above facts. Instead, McFadden states that Ballard Spahr did not terminate Ms. Hahn after the expiration of her FMLA and non-FMLA leave. In point of

11

fact, when McFadden was terminated in May, 2004, Betty Ann Hahn was on an extended three months of medical leave, which also was granted to McFadden. None of McFadden's evidence shows otherwise. McFadden cites the declaration of Cassandra Briscoe but, as explained above, Briscoe began an extended medical leave of absence on October 30, 2003. She was not working in May, 2004, and, hence, she has no personal knowledge of the receptionist position at that time. Therefore, her affidavit does not constitute admissible evidence for purposes of McFadden's opposition to summary judgment and should be disregarded by this Court. See *Londrigan, supra.*

*Undisputed Fact No. 40:* **McFadden contends that she told Charles Henck, the partner for whom she worked, that Riley-Jamison complained about McFadden's need for leave. (Ex. 17, Plaintiff's Third Supplemental Interrogatory Answer, No. 9). McFadden did not inform Henck that she believed that she was being subjected to race discrimination. (Ex. 2, Henck Depo. at 35).**

McFadden responds to Fact No. 40 by contending that she told Mr. Henck that Riley-Jamison made comments about sending her husband to hospice care and about McFadden's taking leave. Significantly, McFadden does dispute that she never told Henck she believed any alleged harassment was due to her race. Fact No. 40 is undisputed.

*Undisputed Fact No. 42:* **McFadden cannot recall the specifics of any purported harassing comments made to her. (Ex. 9, Plaintiff's Answers to Interrogatory No. 8, 9, Ex. 5, McFadden Depo. at 219-220, 223).**

McFadden responds to Fact No. 42 by citing her Complaint and her deposition testimony to support her recitation of purported harassing comments made to her. McFadden admitted at

12

her deposition, however, that the statements she attributes to Riley-Jamison are not Riley-Jamison's exact words, but rather merely the manner in which McFadden has interpreted Riley-Jamison's attitude. (Ex. 5, McFadden Depo., 5/16/07, p. 106). There is no dispute that McFadden cannot recall the specifics of the purported harassing comments. Fact No. 42 is undisputed.

*Undisputed Fact No. 48:* **McFadden's disability leave began on October 15, 2003. Ballard Spahr paid her 60% of her salary from November 15, 2003 through January 15, 2004. (Ex. 7, Riley-Jamison Dec. at 12)**.

See Reply to No. 19, *supra..*

C.     **Reply With Respect to McFadden's Group Responses**

McFadden has responded to a number of facts in a group fashion. For example, McFadden has responded to Fact Nos. 16-17, 45-61, 65-76, dealing with her medical conditions and receipt of disability benefits, together in one section. She also has responded to Fact Nos. 89-92, dealing with her purported "comparators," together in another section. McFadden has not identified what, if any, facts in the paragraphs to which she responds are disputed. Rather, McFadden's group responses implicitly assume the undisputed facts and, then, argue that those facts do not undermine her claims in this case. This is not a proper response. A proper response sets forth the facts in dispute. Local Rule 56.1. Because McFadden has not specifically disputed Fact Nos. 16-17, 52-55, 45-61, 65-76, and 89-92, those facts stand admitted.

Moreover, as set forth below, McFadden's arguments in her various group responses do not call into question the undisputed nature of Defendants' factual statements:

*Undisputed Fact Nos. 16, 17:*

13

McFadden responds to Fact Nos. 16 and 17, which list McFadden's symptoms and illnesses, by arguing that notwithstanding her disability, she could have performed the essential functions of a receptionist position. This response does not address the facts that are stated. Undisputed Fact Nos. 16 and 17 stand admitted.

*Undisputed Fact Nos. 52-55:*

In Fact Nos. 52-55, Ballard Spahr discusses McFadden's receipt of disability insurance from UnumProvident, Ballard Spahr's disability insurance carrier. McFadden responds to Fact Nos. 52-55 by citing the Complaint, ¶ 45. Paragraph 45 of the Complaint states that McFadden did not receive a written response to her leave request to Ballard Spahr. This statement is non-responsive and does not create any dispute of fact. Fact Nos. 52-55 stand undisputed.

*Undisputed Fact Nos. 45-61, 65-76:*

McFadden groups twenty-four individual statements of fact in to one response. Rule 56, Local Rule 56.1. McFadden's response makes the legal argument that the standard for awarding Social Security disability insurance does not take into account reasonable accommodation and cites to case law from the Sixth and Eighth Circuit. However, she does not dispute any of the facts in Paragraphs 45-61 and 65-76.[2] Accordingly, those facts should be deemed admitted for purposes of Defendants' summary judgment motion.

*Undisputed Fact Nos. 89-92*:

McFadden groups Undisputed Fact Nos. 89-92 in to one response, but does not specifically dispute any of the facts.

---

[2] Defendants address McFadden's legal argument in their reply memorandum which accompanies this response.

Instead, McFadden's response cites the declaration from Cassandra Briscoe, who acted as an administrative assistant to Wendy Iverson, the office manager for the Washington office of Ballard Spahr, and Riley-Jamison.  On or about October 30, 2003, when Briscoe went on disability leave, and she never returned to work.  (Plaintiff's Ex. 10, Briscoe Dec., ¶ 11).  Thus, Briscoe has no personal knowledge of Ms. Hahn's leave in 2004, as she no longer was working at the law firm.  She also has no personal knowledge of the pay and benefits decreases for those employees who were working part-time schedules.   Thus, Briscoe's affidavit testimony does not constitute admissible evidence, and should carry no weight in this proceeding.  See *Londrigan, supra*.

McFadden's response also mischaracterizes the import of Riley-Jamison's testimony regarding leave procedures.  Riley-Jamison testified that FMLA leave was administered by the benefits department.  However, this testimony is not relevant to the issue of whether the employees identified by McFadden are proper comparators.  They are not.  For example, the employees (Hannah, Mintz, and Wilbur) who received non-FMLA leave did not have their leave "determined" by the benefits department.  Their alternative work schedules were approved by the partners for whom those individuals worked.  Riley-Jamison's deposition testimony, cited by McFadden, which is limited to FMLA-related leave, is not to the contrary.  (Ex. 4, Riley-Jamison Depo., pp. 47, 106-107, Ex. 14, Defendants' Supplemental Answers and Objections to Interrogatories, No. 17).

The remainder of McFadden's response simply is a rehash of her argument as to whether the employees she has identified were similarly situated to her.  Such legal argument does not dispute any of the facts set forth in Nos. 89-92.  Those facts stand admitted.

## II.  DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE ISSUES OF MATERIAL FACT

McFadden lists twenty questions that she contends constitute genuine issues of material fact. For example, McFadden lists as issues of fact such questions as (1) whether violations of the FMLA were willful? (2) whether Riley-Jamison committed unlawful harassment? and (3) whether McFadden made inconsistent statements to the SSA. These questions are not factual statements supported by citations to the record; they are nothing but argument.

It is improper for McFadden to include such argument in any counter statement of facts. See, Fed. R. Civ. P. 56, Local Rule 56.1; *Robertson v. Am. Airlines, Inc.*, 239 F. Supp.2d 5, (D. D.C. 2002). Accordingly, McFadden's Statement of Genuine Issues of Material Fact should be disregarded by this Court, and Defendants should not be required to respond to such improper legal argument. To the extent that a response may be required, however, Defendants state that as set forth more fully in their reply memorandum in support of summary judgment, the answer is "no" to Questions A-F, H-L and N-T, and "yes" to questions G (McFadden's statements to UnumProvident and the Social Security Administration are inconsistent with her position in this case) and M (Defendants offered McFadden an intermittent position in the ARC as a reasonable accommodation).

## III.  CONCLUSION

For the foregoing reasons and those set forth in Defendants' accompanying reply memorandum, there are no genuine issues of material fact with respect to McFadden's claims in this case and summary judgment is appropriately entered in favor of the Defendants.

Respectfully submitted,

Ballard Spahr LLP, etc.
By counsel


_____/s/_____
Bernard J. DiMuro, Esq. (D.C. Bar #393020)
Jonathan R. Mook, Esq. (D.C. Bar #929406)
DiMURO GINSBERG, P.C.
908 King Street, Suite 200
Alexandria, VA  22314
(703) 684-4333
(703) 548-3181 (facsimile)