Exhibit A: Comparison of McFadden's Deposition Cites to Actual Testimony

| Page Opposition | Deposition Cite | Cited for | Actual Testimony |
|---|---|---|---|
| 5 | Riley-Jamison 66 | Riley-Jamison felt McFadden took a lot of time off work. | No mention of Riley-Jamison's opinion on those pages |
| 3 | McFadden (II) 13-19 | McFadden called Henck on the day of her husband's diagnosis to report his condition. She also spoke to Meg and again on 10/23. | No mention of discussion with Henck |
| 3 | McFadden 13-19 | Riley-Jamison told McFadden that she would be placed on FMLA b/c she was out for more than 3 days. | No discussion of placing McFadden on FMLA leave |
| 3 | McFadden 14-20 | McFadden reported to work on 11/2/02 after her husband's surgery. On her return, Riley-Jamison gave her a memo from Forman stating that FMLA coverage was 10/17/02-1/8/03. | No such discussion |
| 4 | McFadden 14-19 (II), 72-78 | McFadden requested additional leave to care for her husband, but Riley-Jamison and Forman told her that the 12 week period started the day of her colonoscopy, would include days that she showed up to work, and could not be taken intermittently or outside the time in the memo. | McFadden testified that she talked to Forman in November, 2002 about FMLA dates; she also spoke to Riley-Jamison and Forman in January, 2003 about FMLA dates. In 2003, they did not tell her that she only had 12 weeks. |
| 4 | McFadden 97 | McFadden questioned Riley-Jamison and Forman about their interpretation of the FMLA. | McFadden discusses her colonoscopy dates and use of FMLA but does not mention Riley-Jamison or Forman. |
| 4 | McFadden 67-71 | McFadden told Riley-Jamison that she sought advice from Labor Dept., who confirmed the 16 weeks. Riley-Jamison and Forman insisted it was only 12. | McFadden mentions being misinformed about the number of weeks of leave, but she does not talk about conversations with Riley-Jamison and Forman re: Labor Dept |
| 5 | McFadden 102-103 | Riley-Jamison told McFadden that her leave was not working out. | McFadden testifies that Henck told her that Riley-Jamison told him the |

EXHIBIT A

| | | | |
|---|---|---|---|
| | | | modified schedule wasn't working out, but that she followed Henck not Riley-Jamison. She did not testify that Riley-Jamison said this. |
| 6 | McFadden 241-3 | McFadden received 7 e-mails in one days from Riley-Jamison stating that she was on leave without pay | McFadden testified that she got 7 e-mails from Riley-Jamison on one day in September, 2003, but Riley-Jamison was on maternity leave at the time. |
| 6 | McFadden 222-6 | Riley-Jamison told McFadden and Briscoe that Ballard had to hire more younger people with fewer medical problems. | McFadden testified that in September or August, 2003, Riley-Jamison said Ballard had to hire younger people with fewer medical problems, but Riley-Jamison was on maternity leave at the time. |
| 6 | McFadden 134-5, 144 | In March, 2003, Riley-Jamison berated McFadden in the lunchroom. | McFadden discusses the daily living and activities she was capable of, not an interaction with Riley-Jamison |
| 8 | McFadden 186 | Ballard did not offer McFadden the receptionist job, so her physicians reported McFadden as incapable of resuming employment in the future. | McFadden discusses a letter from her psychiatrist, not whether her physicians certified her incapable of working because she was not a receptionist. |
| 17 | McFadden 13-19 (II) | McFadden specifically told Henck and Riley-Jamison about her husband condition on 10/21/02 and 10/23/02. She told them about his need for care and surgery. | McFadden discusses whether she was given 12 or 16 weeks of FMLA leave, not her statements in October, 2002. |
| 20 | McFadden 102-3 | Riley-Jamison told McFadden that reduced schedule wasn't working out | Henck told McFadden that Riley-Jamison said the schedule was not working out, McFadden was not told this by Riley-Jamison. |
| 20 | McFadden 104-7 | Riley-Jamison told McFadden to find someone else to care for her husband because he was dying anyway. | McFadden testified that she felt like Riley-Jamison was telling her that your husband is dying anyway so don't waste your time, not that Riley-Jamison actually made |

| | | | the statement. |
|---|---|---|---|
| 22 | McFadden125-6 | McFadden told Henck that Meg made derogatory statements about employees with serious health conditions and directed her to get others to care for her husband. | McFadden discusses her health condition, not derogatory statements. |
| 22 | McFadden 134-5, 144 | Riley-Jamison confronted McFadden in the lunchroom for telling others that she was mistreated. | McFadden discusses her daily living conditions, not any confrontations. |
| 22 | Riley-Jamison 79-82 | Riley-Jamison denies lunchroom confrontation with McFadden. | The lunchroom confrontation is not discussed |
| 26 | McFadden 190-4 | On 5/14/04, McFadden requested to be reassigned as receptionist because she knew that she could perform the position. | McFadden discusses Hahn's FMLA leave and her lack of personal knowledge of Hahn's leave status. |
| 29 | McFadden 191 | Hahn was granted leave benefits in 2004 and job retention after the expiration of her FMLA leave | McFadden mentions that Hahn on FMLA but does not discuss Hahn's benefits. |
| 30 | McFadden 319-321 | Wilbur got to work from home for 4-6 months during two stints of maternity leave. She also got a reduced schedule for her son's anxiety issues. | There is no discussion of Elaine Wilbur. |
| 30 | Riley-Jamison 102-7 | All legal secretaries covered by same leave policies and same decision makers (DiBattista and Forman) made the leave determinations. | Riley-Jamison discusses the termination conversation and that Philadelphia department (DiBattista and Forman) administers the FMLA leave. |
| 32 | McFadden 275-6 | Forman was part of the decision makers because she participated in the conference call terminating McFadden. | McFadden mentions that she called Forman on the day before her termination and Riley-Jamison on the day of her termination. She does not testify to the decision makers. |

Defendants submit that the Court should disregard any of the facts listed above as they are not supported by McFadden's own exhibits.