UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VANESSA A. MCFADDEN,               )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )   Civil Case No.  05-2401 (RJL)
                                   )
BALLARD, SPAHR, ANDREWS, &         )
INGERSOLL, LLP, *et al.*,          )
                                   )
        Defendants.                )



MEMORANDUM OPINION
(September **30**, 2008)

Plaintiff Vanessa McFadden ("McFadden" or "plaintiff") brings this action against

Ballard Spahr Andrews & Ingersoll, LLP ("Ballard Spahr") and its Human Resources

Manager, Margaret Riley-Jamison (collectively "defendants"), alleging (1) violations of

the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*, ("FMLA") and (2)

discrimination and retaliation on account of race and disability under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, ("Title VII"), the Americans with

Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, ("ADA"), 42 U.S.C. § 1981 ("§ 1981"), and

the D.C. Human Rights Act, D.C. Code §§ 2-1402.11 *et seq.*, ("DCHRA").  Before the

Court is the defendants' motion for summary judgment.  After careful consideration of

the parties' pleadings, the relevant law, and the entire record herein, the Court GRANTS

the defendants' motion and dismisses the case.

1

## BACKGROUND

McFadden, an African-American female, began work as a full-time legal secretary at Ballard Spahr in 1989. (Compl. ¶ 12; Defs.' Statement of Undisputed Facts ("Defs.' Stmt.") ¶ 1.) Beginning in October 2002 and continuing until her termination in May 2004, McFadden took various forms of leave in order to care for her husband and in connection with her own medical condition. (Defs.' Stmt. ¶¶ 6-8, 14, 18-25.) McFadden alleges that during this period defendants: (1) interfered with McFadden's FMLA leave entitlement; (2) discriminated against McFadden on account of her race; (3) illegally terminated McFadden on account of her disability; and (4) retaliated against McFadden for her use of FMLA leave to which she was entitled. (Pl.'s Opp'n Br. at 1-2.) The undisputed facts are as follows.

In October 2002, McFadden's husband was diagnosed with terminal cancer and scheduled for immediate surgery. (Compl. ¶ 17; Defs.' Stmt. ¶ 6.) McFadden requested time off from work in order to care for him during and after the surgery. (Defs.' Stmt. ¶ 7.) Later, she requested a reduced work schedule so that she could care for him during his chemotherapy. (Compl. ¶ 22.) Ballard Spahr responded by granting McFadden a combination of paid leave and unpaid FMLA leave and reducing her work schedule to three to four work days per week, on alternating weeks. (Defs.' Stmt. ¶¶ 8, 13; Pl.'s Stmt. ¶ 12.) The leave benefits memorandum Ballard Spahr provided McFadden stated that her FMLA coverage period was October 17, 2002 to January 8, 2003 (twelve weeks) and that the firm was advancing McFadden ten days of paid leave from 2003 to

supplement the two remaining days of paid leave she had for 2002. (Defs.' Stmt. ¶ 13; Nov. 1, 2002 Memo., Ex. 8 to Defs.' Mem. in Supp. of Mot. for Summ. J.)

In early 2003, McFadden herself began to experience health problems and was subsequently diagnosed with Graves disease, fibromyalgia, and other serious medical conditions. (Compl. ¶ 36; Defs.' Stmt. ¶ 16.) By mid-October of that year she was no longer able to work in her position as a legal secretary and she left the firm on disability leave.[1] (Compl. ¶ 39; Defs.' Stmt. ¶ 19.) McFadden's primary care physician stated that McFadden was "physically and mentally incapacitated" and "unable to perform any work," and her psychiatrist agreed that McFadden could not return to work "now or in the foreseeable future." (Defs.' Stmt. ¶¶ 66-67, 69.) Ballard Spahr thereafter provided McFadden with renewed FMLA leave benefits, paid disability leave from November 15, 2003 through January 15, 2004, and three months of non-FMLA leave commencing at the FMLA leave's expiration on February 4, 2004. (Defs.' Stmt. ¶¶ 21, 22-23, 48.) Ballard Spahr's insurance carrier, UnumProvident, took over the payments under the firm's disability insurance plan in January 2004, and McFadden was approved for Social Security Disability Insurance ("SSDI") in March 2004.[2] (Defs.' Stmt. ¶¶ 49-55, 60.)

On May 14, 2004, shortly after her non-FMLA leave expired, McFadden contacted Ballard Spahr to inquire about her leave status. (Defs.' Stmt. ¶¶ 25-26.) Due

---

[1]    McFadden's symptoms included headache clusters lasting two to three days and causing loss of vision, inability to stand without assistance or to stand with assistance for more than a few minutes, inability to lift anything, inability to maintain personal hygiene without help, and incontinence, among other symptoms. (Defs.' Stmt. ¶ 17.)

[2]    UnumProvident initially denied McFadden's disability insurance claim, but at Ballard Spahr's urging made a series of payments in 2004 under a reservation of rights. UnumProvident ultimately approved McFadden's disability claim in September 2005. (Defs.' Stmt. ¶¶ 49-55.)

3

to her medical condition, McFadden was unable to return to the firm as a legal secretary. (Defs.' Stmt. ¶ 29.) Ballard Spahr offered McFadden a position in the administrative department ("ARC"), which McFadden declined because she could not perform word processing. (Defs.' Stmt. ¶¶ 29-30.) McFadden then asked if she could return to the firm in the receptionist position. (Defs.' Stmt. ¶ 31.) Ballard Spahr denied McFadden's request because the receptionist position was being held open for another employee who was out on medical leave at the time. (Defs.' Stmt. ¶ 31.) Ballard Spahr's director of human resources then terminated McFadden later that same day. (Defs.' Stmt. ¶ 33.)

McFadden subsequently filed a complaint with the Equal Employment Opportunity Commission, which issued McFadden a Dismissal and Notice of Rights on September 14, 2005. (Compl., App. A) McFadden filed this lawsuit on December 14, 2005.

## LEGAL STANDARD

Summary judgment should be rendered if the pleadings and the record, including any affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing that there is no genuine issue of material fact is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the nonmovant, giving the nonmovant the benefit of all justifiable inferences derived from the evidence. *Id.* at 255. The nonmovant, however, may not rely merely on

4

allegations, conclusory statements, or denials in its own pleading, but must set out

specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Greene v.*

*Dalton,* 164 F.3d 671, 675 (D.C. Cir. 1999).  For the following reasons, the Court finds

that the defendants have met their burden and are entitled to judgment as a matter of law.

## ANALYSIS

### I.    McFadden's FMLA Interference Claim

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of

or the attempt to exercise, any right provided" by the FMLA.  29 U.S.C. § 2615(a)(1).[3]

In order to succeed on an FMLA interference claim, a plaintiff must prove both that the

employer interfered with the plaintiff's exercise of FMLA rights and that the interference

caused prejudice.  *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89 (2002).

"Prejudice exists where an employee loses compensation or benefits 'by reason of the

violation,' . . . sustains other monetary losses 'as a direct result of the violation,' . . . or

suffers some loss in employment status remediable through 'appropriate' equitable

relief."  *Reed v. Buckeye Fire Equip.,* 241 Fed. Appx. 917, 924 (4th Cir. 2007) (quoting

29 U.S.C. § 2617(a)(1)).  Here, McFadden alleges that Ballard Spahr and Riley-Jamison

interfered with and/or denied McFadden use of her FMLA entitlement in multiple ways,

---

[3]     The FMLA provides, *inter alia,* that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). An "eligible employee" is "an employee who has been employed . . . for at least 12 months by the employer . . . and for at least 1,250 hours of service with such employer during the previous 12-month period." *Id.* § 2611(2). A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care in a hospital, hospice, or residential medical care facility; or . . . continuing treatment by a health care provider." *Id.* § 2611(11). The parties do not dispute that McFadden was an eligible employee or that she suffered a qualifying serious health condition.

as described below. Ballard Spahr contends that even assuming the truth of McFadden's allegations, which Ballard Spahr disputes, McFadden has failed to present evidence sufficient for a reasonable jury to find that she was prejudiced as a result. I agree.

McFadden alleges three FMLA interference violations. First, she contends that Ballard Spahr and Riley-Jamison willfully misinformed McFadden in October 2002 about the amount of FMLA leave to which she was entitled, representing that McFadden was entitled only to twelve weeks of unpaid leave, rather than sixteen, as provided under the D.C. Family and Medical Leave Act, and that McFadden was required to take her leave within the specified twelve-week "coverage period." (Compl. ¶ 23; Pl.'s Opp'n Br. at 18.) Second, McFadden contends that Ballard Spahr improperly counted against her 2002 FMLA leave two days that she took off from work for her own pre-scheduled medical appointments. (Pl.'s Opp'n Br. at 18.) And third, McFadden contends that Riley-Jamison "harassed" her about her modified work schedule and FMLA leave entitlement, which made McFadden feel "badgered" into forgoing her FMLA leave. (Pl.'s Stmt. ¶ 42; Pl.'s Opp'n Br. at 18.)[4]

Even if the Court assumes that these incidents amount to an actionable "interference" under the FMLA, McFadden fails to demonstrate that such interference caused her prejudice. To prove prejudice, McFadden must show that the violations either

---

[4]     Riley-Jamison's alleged harassment included (1) telling McFadden that Ballard Spahr was doing her a "favor" by allowing her to work a modified schedule and that her schedule was causing "turmoil" and "wasn't working out," (2) telling McFadden to find someone else to care for husband since he "was dying anyway," (3) telling McFadden that Ballard Spahr needed to hire younger people with fewer "medical problems," and (4) requiring McFadden to call-in on her pre-scheduled and pre-approved days off for FMLA leave. (Pl.'s Stmt. ¶ 42.) McFadden contends that even though she complained about Riley-Jamison's conduct to the attorney for whom she worked, neither he nor anyone else at the firm took sufficient action to stop it. (Pl.'s Stmt. ¶ 40.)

(1) caused a monetary loss or (2) are remediable through equitable relief. *See Ragsdale*, 535 U.S. at 89. McFadden provides insufficient evidence to support either. First, although McFadden contends that she was "entitled . . . to four additional weeks of unpaid leave that she never received" (Pl.'s Stmt. ¶ 12.), critically, she does not dispute that Ballard Spahr ever denied her leave when she requested it.[5]  (Defs.' Stmt. ¶ 21); *Rodgers v. City of Des Moines*, 435 F.3d 904, 909 (8th Cir. 2006) (plaintiff suffered no prejudice where undisputed evidence showed plaintiff received her requested FMLA leave). Second, McFadden contends that "Riley-Jamison's pressured [sic] caused [her] to hire her sister to care for her husband one workday per week." (Pl.'s Opp'n Br. at 21 n.119.) Yet the evidence McFadden cites – her own declaration and her sister's verified statement – simply does not support this contention. McFadden's declaration states that "[o]n the [sic] some of the days that I reported to work under the part-time schedule, I paid my sister Velta Adams to take care of my husband." (McFadden Decl. ¶ 4.) McFadden's sister, however, does not reference this payment at all. (V. Adams Verified Stmt., Ex. 25 to Pls.' Opp'n Br.) And even assuming McFadden did, in fact, make such payments, her claim fails because she but does not allege a causal relationship between

---

[5]      In her opposition materials, McFadden cites to her own declaration, in which she states that Ballard Spahr denied her request for a sixteen-week leave of absence, as evidence of a disputed material fact on this issue. (McFadden Decl. ¶ 2.) McFadden's statement in her declaration, however, contradicts her previous sworn deposition testimony, during which she answered the question "Is there a day or a time that you asked for leave and you didn't get it?" by stating "Not that I can recall" and the question "Did you ever ask that your schedule be modified in a different way and it was denied?" by stating "No." (McFadden Dep. at 98:1-2, 99:1-2, 100:17-20, May 17, 2007.) Because McFadden's declaration on this point contradicts, rather than clarifies, her previous sworn testimony, the Court disregards it for purposes of summary judgment. *See Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007) (sham affidavit rule "precludes a party from creating an issue of material fact by contradicting prior sworn testimony unless the 'shifting party can offer persuasive reasons for believing the supposed correction' is more accurate than the prior testimony." (citations omitted)).

Ballard Spahr's conduct and the payments. (McFadden Decl. ¶ 4.) Accordingly, the Court finds that McFadden has failed to present sufficient evidence such that a reasonable jury could find that she suffered prejudice on account of Ballard Spahr's or Riley-Jamison's alleged FMLA violations. Defendants are therefore entitled to summary judgment on McFadden's FMLA claim.

## II.    McFadden's Disability Discrimination Claim

To establish a *prima facie* case under the ADA and the DCHRA for discrimination based on disability, a plaintiff must establish that: (1) she has a disability as defined by the ADA; (2) she was qualified for her position with or without a reasonable accommodation; and (3) she suffered an adverse employment action because of her disability.[6] *Swanks v. WMATA*, 179 F.3d 929, 934 (D.C. Cir. 1999).[7] For purposes of establishing a *prima facie* case, a "qualified individual" is an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Ballard Spahr contends that, even presuming McFadden can establish the first and third elements, she has failed to present evidence such that a reasonable jury could conclude that, with or without a "reasonable accommodation," she could have performed the essential functions of her job. Once again, I agree.

---

[6]    The ADA makes it unlawful for an employer to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . [the] discharge of [an] employee[]." 42 U.S.C. § 12112(a). The DCHRA makes it unlawful to discharge or otherwise discriminate against an employee "wholly or partially for a discriminatory reason based upon . . . disability." D.C. Code § 2-1402.11(a)(1).

[7]    Because DCHRA claims are subject to the same analysis as ADA claims, see *Whitbeck v. Vital Signs, Inc.*, 159 F.3d 1369, 1371 (D.C. Cir. 1998), the Court refers from this point on to McFadden's claims under the ADA only.

First, McFadden has failed to demonstrate that she could perform the essential functions of the receptionist position with or without a "reasonable accommodation."[8] To determine a position's essential function, "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8). Here, Ballard Spahr provided testimony and a job description evidencing that the position required the receptionist be punctual and reliable as well as perform customary administrative tasks. (Defs.' Stmt. ¶ 34; Riley-Jamison Dep. at 177:15-19; Defs.' Reply Br., Ex. C.) McFadden does not dispute that at the time of her termination, she was unable to attend work consistently and had no way of predicting whether her illnesses would allow her to attend work on a given day.[9] (Defs.' Stmt. ¶ 35.) Nor does McFadden dispute that her doctors found her incapable of resuming gainful employment or that she certified to her insurance provider and the Social Security Administration that she was unable to return to work, then or in the future. (Defs.' Stmt. ¶¶ 65-74.) Instead, McFadden relies solely on her own deposition testimony to argue that, with the aid of a

---

[8]   McFadden concedes that she could not have returned to her previous position of legal secretary or the ARC position Ballard Spahr offered at the conclusion of her non-FMLA leave. (Defs.' Stmt. ¶¶ 29-30.). She contends, however, that she could have performed the essential functions of the receptionist position, which she contends was vacant at the time her non-FMLA leave expired. (Pl.'s Stmt. ¶ 23; Pl.'s Opp'n Br. at 28.)

[9]   During her deposition, McFadden testified as follows:

   Q:   [I]n 2003 and early 2004, is it true that there would be days that you could not bring yourself out of bed?
   A:   Yes.
   Q.   How often would that happen in the first half of '04?
   A.   For instance, I had one attack that lasted a week and a half, and all I could do was turn my head from side to side.
   Q.   Couldn't get out of bed?
   A.   All I could do was turn my head from side to side.

(McFadden Dep. at 137:22-138:10, May 16, 2007.)

headset and a few breaks during the workday, she could have performed the receptionist job. (Pl.'s Opp'n Br. at 28.)  Such speculative and self-serving assertions – lacking any accompanying explanation for their inconsistency with her doctor's assessments and her own statements to her benefits providers – are insufficient to withstand summary judgment. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 798 (1999) ("[A]n ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work . . . . [S]he must explain why that SSDI contention is consistent with her ADA claim . . . ."); *Duncan v. Harvey*, 479 F. Supp. 2d 125, 133 (D.D.C. 2007) ("plaintiff's mere self-serving statement that she believed she could have performed [the position] is insufficient to create a genuine issue of fact.").

Second, even if McFadden could have performed the receptionist position, she fails to establish that her requested accommodation in the form of a reassignment from her previous legal secretary position to the receptionist position was "reasonable" on its face or on the particular facts of this case. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401, 405-06 (2002) (an accommodation can be reasonable "ordinarily or in the run of cases" or as applied).  McFadden concedes that, at the time she requested reassignment to the receptionist position, the firm was holding the position open for the Caucasian employee who held it ("the receptionist") but who was on non-FMLA medical leave. (Defs.' Stmt. ¶ 37.)  McFadden nevertheless contends that, because the receptionist was not guaranteed job protection while on non-FMLA leave and the position was at the time being filled by temporary workers, the position was "vacant" for purposes of the ADA.

(Pl.'s Opp'n Br. at 28.).  Even applying all justifiable inferences in McFadden's favor, McFadden's argument is contrary to both the spirit and the letter of the law.

While the ADA provides that "'reasonable accommodation' may include . . . reassignment to a vacant position," 42 U.S.C. § 12111(9), the law is clear that employers are not required to terminate – or "bump" – one employee to accommodate another.  *See Aka v. Washington Hosp. Center*, 156 F.3d 1284, 1305  (D.C. Cir. 1998) (employers need not "bump" other employees as an accommodation); *see also Barnett*, 535 U.S. at 409-10 (O'Connor, J., concurring) ("[T]he legislative history of the [ADA] confirms that Congress did not intend reasonable accommodation to require bumping other employees.").  Indeed, the ADA only requires that Ballard Spahr provide an accommodation that ensures McFadden the same, but not better, opportunities as the firm's other employees.  *See Barnett*, 535 U.S. at 397 (the ADA "requires preferences in the form of 'reasonable accommodations' that are needed for those with disabilities to obtain the *same* workplace opportunities that those without disabilities automatically enjoy") (emphasis in original).  McFadden contends that Ballard Spahr was obligated to undermine the receptionist's interest in her position, which the firm was holding for her while she was out on non-FMLA leave, in order accommodate McFadden.  That form of accommodation – the modification of one employee's benefits in order to accommodate another – is just the sort that is presumptively unreasonable.[10]  *See Barnett*, 535 U.S. at

---

[10]     In *Barnett*, the Supreme Court noted that special circumstances may warrant a finding that a requested accommodation, while otherwise unreasonable "in the run of cases," may be reasonable on the facts of a given case, such as when an employer regularly changes its benefits system in a manner that reduces employee expectations that the system will be followed consistently.  535 U.S. at 405-06.

400-01 (an accommodation can be "unreasonable because of its impact . . . on fellow

employees – say, because it will lead to dismissals . . . or modification of employee

benefits"); *see also Aka*, 156 F.3d at 1304 n.25.  Accordingly, because McFadden fails to

identify a *vacant* position to which Ballard Spahr could have reassigned her or any other

"reasonable accommodation" that would have allowed her to return to work at the firm,

she fails to establish a *prima facie* case of disability discrimination and the defendants are

entitled to judgment as a matter of law on McFadden's ADA and DCHRA claims.

## III.   McFadden's Race Discrimination and Retaliation Claims

In race discrimination and retaliation suits under Title VII and DCHRA, a plaintiff

may prove his or her claim with either direct evidence or by indirectly proving a *prima*

*facie* case under the familiar burden-shifting framework established in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973).[11]  *Kalekiristos v. CTF Hotel Mgmt. Corp.*,

958 F. Supp. 641, 665 (D.D.C. 1997).[12]  Under the *McDonnell Douglas* framework, the

plaintiff carries the initial burden of production and must establish a *prima facie* case of

discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  If the plaintiff does so, the burden

shifts to the defendant, who "must then articulate a legitimate, nondiscriminatory reason

---

McFadden makes no allegations nor presents any facts to suggest that Ballard Spahr employees do not expect their benefits program to be implemented uniformly and fairly in all circumstances.

[11]      Title VII provides that it is unlawful for an employer to "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The DCHRA makes it unlawful to discharge or otherwise discriminate against an employee "wholly or partially for a discriminatory reason based upon . . . race."  D.C. Code § 2-1402.11(a)(1).

[12]      Because DCHRA race discrimination and retaliation claims are subject to the same analysis as Title VII claims, see *Carney v. American Univ.*, 151 F.3d 1090, 1093 (D.C. Cir. 1998), the Court refers from this point on to McFadden's claims under the Title VII only.

for its actions." *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant successfully provides a valid reason, the burden shifts back to the plaintiff-employee, who "must then demonstrate that the employer's stated reason was pretextual and that the true reason was discriminatory." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

The D.C. Circuit has recently clarified the *McDonnell Douglas* framework where an employer asserts a legitimate, non-discriminatory reason for the adverse employment decision.[13] *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). In such cases, the court need not – *and should not* – assess the plaintiff's *prima facie* case, but should proceed directly to the third step of the *McDonnell Douglas* framework and determine whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race." *Id.*

Here, McFadden claims that Ballard Spahr discriminated against her on the basis of race when it refused to reassign her to the receptionist position and then subsequently terminated her. (Pls.' Opp'n at 2, 30-32; Compl. ¶¶ 65-67.) Ballard Spahr contends that the receptionist position was not available at the time McFadden's leave expired and that it terminated McFadden for the legitimate, non-discriminatory reason that she could no

---

[13]    While *Brady* was decided in the context of a Title VII disparate-treatment action, the analysis is equally applicable to retaliation suits. *See Laurent v. Bureau of Rehab., Inc.*, 544 F. Supp. 2d 17, 22 n.3 (D.D.C. 2008) (finding that examination of plaintiff's *prima facie* case of retaliation was irrelevant where defendant articulated a legitimate, non-discriminatory reason for the adverse employment action); *see also, e.g., Bergman v. Paulson*, 555 F. Supp. 2d 25, 35 (D.D.C. 2008) (applying *Brady* analysis to a retaliation claim).

longer perform her job due to her medical condition. (Defs.' Mem. in Supp. of Mot. for

Summ J. at 28.) Accordingly, the Court must determine whether McFadden has

produced sufficient evidence for a reasonable jury to find these asserted non-

discriminatory reasons were a pretext for discrimination. She has not!

The most common method for proving pretext – and the one McFadden attempts

to rely on here – is to show that similarly situated employees who are not part of the

protected class received more favorable treatment. *See Brady*, 520 F.3d at 495.

Employees are "similarly situated" when "all of the relevant aspects" of their

employment situations are "nearly identical." *Neuren v. Adduci, Mastriani, Meeks, &*

*Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995). To make this determination, courts look to,

*inter alia*, whether the alleged comparators "dealt with the same supervisor, have been

subject to the same standards and have engaged in the same conduct without such

differentiating or mitigating circumstances that would distinguish their conduct or the

employer's treatment of them for it." *Childs-Pierce v. Utility Workers Union of America*,

383 F. Supp. 2d 60, 70 (D.D.C. 2005). Here, McFadden identifies four Caucasian legal

secretaries, as well as Ballard Spahr's Caucasian receptionist, as alleged comparators and

claims that each received more favorable FMLA leave benefits, schedule modifications,

and job protection treatment. (Compl. ¶ 53; Pl.'s Opp'n Br. at 30-31.)[14] McFadden fails,

however, to establish that any of these individuals' employment situations were "nearly

identical" to her own.

---

[14]    McFadden also identified a systems administrator in her Complaint as an alleged comparator, but
in her opposition brief appears to have abandoned that individual. (Compl. ¶¶ 55-59; Pl.'s Opp'n Br. at
30.)

First, McFadden's employment situation is not "nearly identical" to the Caucasian receptionist's situation because she held an entirely different position from McFadden, with different job responsibilities and a different supervisor. (Defs.' Stmt. ¶ 91); *see Barbour v. Browner*, 181 F.3d 1342, 1345 (D.C. Cir. 1999). Second, McFadden's employment situation is not "nearly identical" to the remaining four legal secretaries situations. McFadden did not share a supervisor with any of them – each worked for a different partner at the firm. (Defs.' Stmt. ¶ 92.) This distinction is significant because McFadden concedes that the partner for whom she worked was the person that approved her modified work schedule in early 2003 and was the person to whom she went for relief from Riley-Jamison's alleged harassment concerning her leave situation. (Defs.' Stmt. ¶¶ 9, 40.) Given that McFadden alleges disparate treatment in connection with leave benefits, this relationship is a "relevant aspect" of her employment. And finally, while McFadden presents evidence that each of the alleged comparators received some form of leave benefits, none of the alleged comparators except the Caucasian receptionist – who worked in a different position – were unable to return to their job because of a medical condition.[15] Accordingly, McFadden's employment situation was not "nearly identical" to her alleged comparators, and thus no reasonable jury could find that she was treated differently from similarly situated employees. Defendants are therefore entitled to

---

[15]     McFadden presents evidence that three of the Caucasian legal secretaries were granted adjusted work schedules to accommodate medical or child care issues and that the fourth was permitted to take unpaid leaves of absence for approximately ten weeks during the summer. (Defs.' Stmt. ¶ 92; Pl.'s Stmt. ¶ 92; Briscoe Decl. ¶¶ 12-16.) McFadden does not, however, allege that any of them developed a medical condition with symptoms that permanently prevented them from returning to the job they held prior to developing the condition.

judgment as a matter of law on plaintiff's Title VII and DCHRA race discrimination claims.[16]

## CONCLUSION

For all the foregoing reasons, the Court GRANTS the defendants' Motion for Summary Judgment.  An appropriate Order consistent with this Memorandum Opinion is issued herewith.

RICHARD J. LEON
United States District Judge

---

[16]     McFadden also fails to show that Ballard Spahr's stated legitimate reason for her termination was a pretext for retaliation.  In her Complaint, McFadden alleges that Ballard Spahr's failure to accommodate her, and her subsequent termination, were retaliation for (1) complaining about receiving negative treatment because of her race and (2) her use of FMLA leave benefits.  (Compl. ¶¶ 99-116; Pl.'s Opp'n Br. at 25.)  First, McFadden now concedes that she did not complain to her supervisor about race discrimination and thus never engaged in protected activity with respect to her race discrimination claims. (Defs.' Stmt. ¶¶ 40-41.)  Second, McFadden presents no evidence to demonstrate that Ballard Spahr acted in retaliation for her using FMLA leave benefits.  McFadden's only evidence to support her retaliation claim is her testimony that the firm's benefits administrator told her on the day before her termination, "why don't you just resign and save everyone the trouble." (McFadden Dep. at 275:22-276:1, May 16, 2007.)  But this statement does not reference McFadden's prior use of FMLA leave, and McFadden is otherwise unable to show a causal connection between her FMLA leave and her termination.  Her leave had already run its full course and expired three months before her termination, in February 2004.  *See Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 118-19 (D.D.C. 2004) (three months is outer limit for temporal showing of causation); *cf. Praseuth v. Newell-Rubbermaid, Inc.*, 219 F. Supp. 2d 1157, 1193 (D. Kan. 2002) (no retaliation where employer "did not terminate plaintiff until the end of the leave of absence, one year after the accommodation was initially instituted").

         Finally, for the same reasons McFadden's discrimination and retaliation claims fail to withstand summary judgment against Ballard Spahr, they fail against Riley-Jamison.  *See Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (applying the same framework that governs Title VII claims to § 1981 claims).